## L. VAN DUSEN AND S. MORRISON *v.* THE STAR QUARTZ MINING COMPANY.

CONTRACT TO PAY FOR GOODS FURNISHED ANOTHER.—S. contracted in writing with W. to run a tunnel towards a quartz ledge, and agreed that if W. could not reach the ledge he would pay W. the expense he incurred for provisions. S. then told V. that if he would furnish W. with provisions he would pay for them if W. did not reach the ledge. *Held,* that S. was liable to V. for provisions thus furnished to W.

LIABILITY OF PRINCIPAL FOR ACT OF AGENT.—If V. sells goods to S., ordered by W., the agent of S., and S. recognizes the agency and pays for the same for several years, and V. is then notified by S. that the agency of W. has ceased, he cannot hold S. for goods afterwards furnished on W.'s order, and on the declaration of W. that S. was to pay for them. When the agency of W. ceased, it required the consent of S. to render him liable afterwards.

NOTICE OF TERMINATION OF AGENCY.—Notice by the principal of the contents of a written agreement with his agent, which terminates the agency, is sufficient notice of the termination of the agency.

EVIDENCE OF AGENT'S DECLARATIONS.—If the relation of principal and agent has ceased, and parties dealing with the agent are notified of it, they cannot, in an action against the principal, for goods afterwards delivered to the agent, introduce in evidence the agent's declarations that the agency had been renewed, or that the principal was to pay for the goods.

NOTICE OF CONTENTS OF CONTRACT.—A party having notice of the contents of a written agreement has notice of its legal effect.

ACT OF AGENT AFTER AGENCY CEASES.—If the principal has for a long time recognized the act of his agent in buying goods for him, and paid for them, he is liable for goods ordered by the agent for him from the same parties after the agency ceases, if they have no notice that the agency has ceased. This liability of the principal is the same to the assignee of the demand, even if the assignee had notice before the goods were sold that the agency had ceased.

APPEAL from the District Court, Fourteenth Judicial District, Nevada County.

The defendant was a corporation. The plaintiffs, prior to December, 1867, had furnished goods to the defendant upon the order of Withington, who was the foreman of the works and mine of the defendant. On the 11th day of December, 1866, Withington made the contract in writing with the defendant to run the tunnel referred to in the opinion of the Court. In January, 1867, Mr. Allen, one of the Trustees of the defendant, showed the plaintiff Van Dusen this contract, and he read it. Soon after this Withington commenced running the tunnel. Afterwards, and on the 6th day of July, 1867, Withington entered into another contract in writing with the defendant, by which he was to have the privilege of taking rock from the ledge and working the same in the defendant's mill, at his own expense; and he was, after paying expenses, to apply the surplus of the proceeds of the rock to the work of prosecuting the tunnel. The plaintiffs had no notice of this contract. After this contract was made work was renewed on the mill and ledge, and work on the tunnel was prosecuted at the same time. The goods sued for were furnished, on Withington's order, between the 8th day of May and 6th day of September, 1867.

The plaintiffs' testimony tended to show that Hershey had, for about five years before December, 1866, furnished the defendant with meat on Withington's order, and continued so to do until September 9th, 1867, without any notice that Withington's agency had ceased. Both the plaintiffs and Hershey charged the goods on their account books to the defendant.

On the trial the plaintiffs introduced in evidence the declarations of Withington made to Van Dusen, plaintiff: First, in December, 1866, that "they were going to work on the tunnel, and wanted provisions, and that defendant would pay for them;" and second, in July, 1867, that "they were going to take out rock again and crush it, and wanted some

more provisions, and the defendant was to pay for them."
To this testimony the defendant objected, on the ground
that Withington's declarations were not binding upon the
defendant; but the Court overruled the objection. The
plaintiffs recovered judgment, and the defendant appealed.

The other facts are stated in the opinion of the Court.

*T. B. Reardon,* for Appellant.

The Court erred in admitting in evidence the declaration
of Withington that defendant was to pay for the goods. It
will be perceived that the only excuse for ever admitting the
declaration of Withington as evidence against the defendant
depended upon the fact that the habit and course of dealing
between the parties had been such as to raise the presumption
that the defendant had duly authorized Withington to act for
it in certain particulars and to a certain extent; but after this
habit and course of dealing had been notoriously changed,
and notice thereof given to the plaintiffs, of course the
defendant was no longer liable for the conduct or acts of
Withington when assuming to be its agent, unless upon evi-
dence, other than Withington's declarations, that he was in
fact such agent. It may be admitted that where one of
two innocent persons must suffer by the misconduct of a
third person, that party shall suffer who by his own conduct
has enabled such person, by giving him credit, to practice a
fraud or imposition upon the other party; and if the plaintiffs
had not been notified that the relation of master and servant
had ceased, the plaintiffs could well rely upon this principle
of law. But here, such relation between the defendant
and Withington had been terminated, and the plaintiffs
were duly informed of that fact. I do not overlook the
fact that Van Dusen testified that he "never knew that
Withington had ceased to be foreman of the Star Company,"
but he did admit that the contract was shown to him, and
that speaks for itself; it was the best kind of notice, and
they cannot after that invoke the aid of the rule of law above
referred to.

*A. A. Sargent,* for Respondent.

On the same principle that the defendant is liable for Withington's contracts, it cannot object to the proof of the declarations which he made as its agent, within the scope of the agency, at the time of the contract, and of the character which it had uniformly approved. Agency may be presumed from repeated acts of the agent, adopted and confirmed by the principal, previous to the contract in which the question is raised. (1 Parsons on Cont. 44, and cases cited.) Where the agency is implied from general employment, it may survive this employment, and will be implied in favor of those who knew this general employment and did not know of its cessation. (1 Parsons on Cont. 42, and cases cited.)

The implication will be all the stronger where the presumed agent is doing, under secret agreement with his late principal, all the acts which gave apparent authority before. The appearance of authority in any case, which is by assent of the principal, by which innocent parties would suffer if the authority is denied, will stand for actual authority. In such a case it is not a question of fact, what was the authority, but, what did the principal and agent cause it to appear?

Lord Ellenborough says, in *Pickering* v. *Busk,* 15 East. 38: "I cannot subscribe to the doctrine that a broker's engagements are necessarily and in all cases limited to his actual authority, the reality of which is afterwards to be tried by the fact. It is clear that he may bind his principal within the limits of the authority with which he is apparently clothed by the principal in reference to the subject matter, and there would be no safety in mercantile transactions if he could not."

The law will infer authority in an agent as well from the general character of the acts which he has been permitted to perform, as from a special written power. (*Exchange Bank* v. *Monteith,* 17 Barb. 171.) The declarations of an agent, made in the course of his dealings with a third party, are a

part of the *res gestæ*, and bind his principal equally with the acts to which they relate.     (*North River Bank* v. *Aymer*, 20 Barb. 263.)

By the Court, CROCKETT, J. :

The plaintiffs sue for several amounts alleged to be due to them for goods sold and delivered.   The first count in the complaint is on a special contract to the effect that the defendant promised the plaintiffs if they would furnish certain provisions to Withington & Co., who were running a tunnel for the defendants, and in the event that Withington & Co. failed to reach the ledge, the defendant would pay for the provisions.   The averment is that the provisions were furnished on this agreement; that the rock turned out to be so hard as to be impervious, and Withington & Co. were unable to reach the ledge, and by reason thereof the defendant became liable under its contract to pay for the provisions.

The second is the ordinary count for the price of goods sold and delivered by the plaintiffs to the defendant; and the third count is for a butcher's bill alleged to have been due from the defendant to one Hershey, and which was assigned to the plaintiffs.

The plaintiffs had a verdict and judgment, and the defendant, having made a motion for a new trial, which was denied, has appealed.

The proof under the first count was, in some degree, conflicting; but, in our opinion, the weight of the evidence was in favor of the plaintiffs.   At all events, we cannot disturb the verdict on this branch of the case, on the ground that the plaintiffs failed to prove their cause of action, as alleged.

The proof under the second count is, that one Withington had been for several years the foreman of the defendant's quartz mill and mine, during which period he had been in the habit of ordering from the plaintiff provisions for the use of the hands at the mine and mill, and the bills therefor had always been paid by the defendant, without objection;

that in December, 1866, a written contract was entered into between the defendant, on the one part, and Withington and two other persons of the other part, whereby the latter agreed to run a tunnel for the defendant, and on the terms therein stated; and it was a condition of the contract that if Withington & Co. should not succeed in reaching the ledge, the defendant was to defray the expense of the provisions used during the prosecution of the work; that the plaintiffs had notice of this contract, and that work was being done on the tunnel under it. There was evidence tending to show that work on the tunnel had to be abandoned before the ledge was reached, because the rock became too hard to be worked. The tunnel was therefore abandoned, and work at the mine and mill was resumed as formerly, Withington apparently acting as foreman, in the same manner as he had done before the tunnel was commenced. Under these circumstances he purchased from the plaintiffs the goods mentioned in the second count of the complaint, saying he was purchasing them for the defendant, who would pay for them.

The defendant objected to the proof of his declarations, as incompetent evidence; and it appears that Withington was in fact working the mine on his own account, under a written contract with the defendant, of which the plaintiffs had no notice. The proposition of the defendant is that the plaintiffs had notice of the contract for running the tunnel; that this was sufficient notice that the agency of Withington as foreman for the defendant had ceased; that when the tunnel was abandoned and work was resumed on the mine and mill, the plaintiffs were not authorized to infer that the former relations between Withington and the defendant had been re-established; and that the defendant did nothing to warrant or encourage that belief.

We think the contract for the tunnel was sufficient notice to the plaintiffs that the agency of Withington as foreman was at that time terminated. It contains a provision that Withington and his associates were to have the use of the

defendant's tools, and were to keep them in repair at their own expense, and were to purchase all the provisions of the defendant then on hand; "and, further, to make the said Star Company at no expense whatever, except as above stated." It further appears from the contract that the compensation for running the tunnel was to be one thousand five hundred dollars, whenever that amount shall have been realized from the rock to be taken from the ledge after it shall have been reached; the defendant "to take charge of the mill and mine when the ledge as aforesaid is reached or the mill commences crushing."

These provisions make it plain that during the progress of the work Withington was not acting as foreman for the defendant, in any matter pertaining to the mine and mill. The plaintiffs admit that they had full notice of this contract, and they must be held to have known that the agency had ceased. But after the tunnel was abandoned, operations at the mine and mill were resumed and carried on, apparently, as they had been before, and no notice was given to the plaintiffs that Withington was conducting the work on his own account, and not for the defendant. Under these cir-cumstances, were the plaintiffs authorized to deal with him as the agent of the defendant? We think not. When the agency had once ceased and the plaintiffs knew it, the declarations of Withington were not competent evidence to establish a new agency; and there is no proof that the defendant performed any act tending to delude the plaintiffs into the belief that Withington had again become its agent. It permitted him, it is true, to work the mine and mill at his own expense and for his own benefit; but as the plaintiffs were aware that the former agency had ceased, they had no just right to conclude that a new agency had been established, from the mere fact that Withington was again conducting operations at the mine. The Court, therefore, erred in admitting in evidence the declarations of Withington as to his agency; and so much of the verdict as relates to the

73

cause of action set up in the second count of the complaint is unsupported by the evidence.

We cannot disturb the verdict so far as it is founded on the cause of action alleged in the third count. The course of dealing between Hershey and the defendant was sufficient proof of the original agency; and the testimony is conflicting in respect to the knowledge of Hershey that the agency had terminated. We cannot say that the verdict on this branch of the case is unsupported by the evidence.

There is nothing in the record to enable us to ascertain the precise amount of the erroneous recovery on the second count of the complaint; otherwise, we would modify the judgment, and affirm it as to the remainder of the recovery.

The judgment is therefore reversed, and the cause remanded for a new trial, and remittitur directed to issue forthwith.