[Civ. No. 4098. First Appellate District, Division One.—March 27, 1922.]

JUDSON MANUFACTURING COMPANY (a Corporation), Appellant, v. S. L. JONES & COMPANY (a Corporation), Respondent.

[1] Agency—Shipment of Goods—Refusal of Shipper—Effect of.—Where a shipping company which had been selected by the buyer of iron and steel products as its agent in the shipment of the goods notified the seller's representative that the shipment would not be received unless delivered at the dock before a certain time, the shipping company after the expiration of such time ceased to be the agent of the purchaser in the absence of further request, and any assumed acts of agency were not binding on the buyer.

[2] Id.—Statement of Seller—Reliance upon by Buyer—Retaking Possession of Goods — Estoppel.—Where the seller, through its representative, after being advised that the carrier would not receive the goods for shipment if delivered after a certain time, stated to the buyer's representative that the seller would take possession of the two loads, after delivery at the dock, and the buyer believed and acted on the statement, the seller could not thereafter change its position to the injury of the buyer by stating that it did not take repossession of one of the loads and claim the value thereof as against the buyer.

[3] SALES — DELIVERY OF GOODS TO CARRIER — AGENT OF SELLER.—A railroad company by which a seller consigned goods to a buyer in a named city was not the buyer's agent because no point in such city was specially designated for the delivery, since the buyer was entitled to thereafter select the point and in due time to give the seller notice thereof.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas, Beedy & Lanagan for Appellant.

Powell & Dow for Respondent.

STURTEVANT, J.—This is an action to recover the value of goods, wares, and merchandise sold and delivered. The defendant interposed an answer in which it denied the delivery and also set up an estoppel. The defendant was given a judgment in the trial court and the plaintiff appealed.

The case was tried on its merits. The trial court made copious findings, in which it found among other things that there was no delivery and that the plaintiff was estopped from claiming that a delivery was had. For some months the plaintiff and defendant had been engaged in making numerous contracts for the purchase and sale of iron and steel products. Each of those transactions had been carried forward and completed without any controversy arising between the parties. Then, on January 17, 1918, the defendant wrote a letter to the plaintiff placing an order for goods "f. o. b. steamer San Francisco . . . shipment— per S. S. Hudson Maru scheduled to sail from San Francisco March 23," 1918, and which order was designated (purchaser's record) No. 232. On February 11, 1918 (purchaser's record), No. 259, the defendant purchased another bill of goods "f. o. b. steamer San Francisco . . . shipment by April 24," 1918. Following the practice theretofore existing between them, the defendant notified the plaintiff before February 28, 1918, that the defendant had obtained shipping space and asked that the goods desig-

nated in both of the above-mentioned orders should be delivered on board the "Yuki Maru" scheduled to sail March 4, 1918. After that request was received, and on February 28, 1918, the plaintiff shipped by Southern Pacific from its factory at Emeryville the goods designated, in car N. W. P. No. 4805 and car S. P. No. 53012, the goods mentioned in both orders. As early as 8 o'clock A. M. on March 1, 1918, the defendant knew of such shipment and between 8 and 9 o'clock A. M. of that date, Mr. H. B. Harmon, representing the plaintiff, and Mr. D. R. Nunez, representing the defendant, met at Pier 54, where the steamer "Yuki Maru" was loading. Such meeting was pursuant to mutual notices exchanged by letters and telephonic messages. At that time the representatives of both parties were endeavoring to ascertain whether or not the shipments could legally be made without violating regulations of the federal government. Before going further, it is proper to state that from the record before us the Associated Terminals Company, a corporation, was the duly appointed agent to receive at Pier 54 for those operating the steamship "Yuki Maru," freight to be taken on board of that vessel, and that G. W. Wilson was one of the agents of the Associated Terminals Company authorized to act for that company. When, therefore, Mr. Harmon and Mr. Nunez appeared on the wharf and talked to Mr. Wilson, they were talking to the agent or subagent of the defendant—because Mr. Wilson was the spokesman for the Associated Terminals Company, and that company was the receiving agent for the steamship company that operated the "Yuki Maru," the carrier selected by the purchaser. When they appeared on Pier 54, and up to the time that they left that pier, according to the uncontradicted testimony in the record, the freight-cars hereinabove mentioned had not been placed on the dock. A three-cornered conversation occurred in which the real point at issue was whether or not the cargoes contained on the two cars could be received and shipped after midnight February 28, 1918, because the new federal regulation had taken effect at that hour. The conversation was of such a nature that Mr. Harmon and Mr. Nunez were definitely advised by Mr. Wilson that any shipment of iron or steel received after 12 o'clock midnight, February 28, 1918, could not and would not be received on board the

"Yuki Maru." It is a conceded fact that the "Yuki Maru" was to sail on, and did sail, March 4, 1918. Defendant's order No. 259, although shipped from Emeryville February 28, 1918, in car 53012, was not received and was not shipped on the "Yuki Maru," but was shipped in the "Siberia Maru" on a later date, was duly paid for, and is not an issue in this case.

The plaintiff introduced in evidence a duplicate copy of a receipt issued to the Southern Pacific Company by the S. S. Yuki Maru Trans-Oceanic Company (Tr., p. 62), "Receipt for freight delivered," then: "No. 046, N. W. P. 4805, Car No. S. L. Jones & Company. Pier 54. Received of Southern Pacific Company the following article, way bill from Emeryville, point of shipment. Consignor: Judson Iron Works. Date of way bill, 1/3/28. Number of way bill—1342." Under the heading "Articles" the following: "C. L. Bar Steel. S. L. Company. Yuki Maru. Unloaded 3/2/18 Five A. M. 561 bars steel." In the lower left-hand corner: "S. S. Yuki Maru. Trans-Oceanic Company. H.," and "561" in a circle. It will be noted that the receipt shows on its face that the car was unloaded March 2, 1918, at 5 A. M. In this connection it is important to state that Mr. Nunez testified that when he and Mr. Harmon were on the dock at 8 A. M., March 1, 1918, car 4805 was not on the dock. He also stated that neither of the cars were on the dock and that the dock was comparatively clear of cars and that cars on the dock could be readily seen and enumerated.

After talking to Mr. Wilson and having heard from him that cars 4805 and 53012 had not arrived in time and that the loads on the same therefore could not legally be accepted, Mr. Harmon and Mr. Nunez went to the office of the Southern Pacific on Market Street and endeavored to get that company to assist them in getting the loads placed on board the steamer. They were advised by the Southern Pacific officials that it was impossible. From there they went to the war trade board and talked to Mr. C. O. G. Miller, the head of the board. Mr. Miller informed them that they were not allowed to ship the steel out of the country at that time if it had not been put on board before 12 o'clock midnight, February 28, 1918. They then left Mr. Miller's office and before they separated Mr. Nunez

asked Mr. Harmon if he would take care of the goods until an export license could be obtained. Mr. Harmon said that he would do so as to both cars. He said he would take the two cars to the warehouse of his company. And it may be stated in passing that Mr. Harmon duly issued the proper orders to bring about such a result and that his associates endeavored during the following weeks to locate car 4805, but failed in their endeavor, but that car 53012 was taken to the warehouse as agreed. On March 2d, that is, the next day, Mr. Nunez in a letter repeated the substance of the conversation (Defendant's Two), and on March 4th Mr. Harmon answered that letter and confirmed the agreement (Defendant's Two).

Theretofore it had been the practice followed by Mr. Harmon that when a delivery was made he would present a bill for the amount thereof. As to the load on car N. W. P. No. 4805 he never presented a bill.

A few days later the Southern Pacific presented to the defendant its bill for freight. The defendant immediately notified the Southern Pacific that the bill should have been presented to the plaintiff and at the same time sent copies of the correspondence to the plaintiff.

In this condition the matter rested until August. Whatever became of the shipment is not known. Assuming that the Associated Terminals Company and the Trans-Oceanic Company had been designated as the agents of the defendant, the foregoing facts show that both companies had declined to act as such agents after midnight, February 28, 1918. That those companies had so declined Mr. Harmon and the plaintiff had direct and positive notice. If thereafter, without further request on the part of the defendant, the shipping company assumed to act as the agent of the defendant, such act on its part would not be binding on the defendant.

[1] From the facts which we have recited it seems to us that it is patent that whether the load of N. W. P. No. 4805 was ever placed on board the "Yuki Maru" nevertheless that such placing was not a delivery as against the defendant. Although the Trans-Oceanic Company had been selected by the defendant, as the agent of the defendant, the shipping company had expressly and positively declined to accept the shipment on behalf of the defendant, and this

fact was stated in the presence of the agent of the plaintiff. Until thereafter the defendant was further notified and until it had given further instructions, the shipping company had ceased to be its agent.   (2 C. J. 554; *Van Dusen* v. *Star Quartz Min. Co.*, 36 Cal. 571 [95 Am. Dec. 209].)

[2]   And it further appears that the case, as presented by the foregoing facts, shows that on the first day of March, 1918, the plaintiff, through Mr. Harmon, stated that it would take possession of the loads on the two freight-cars; that such statement was made in the best of good faith, intentionally and deliberately, and led Mr. Nunez and the defendant company to believe, and they did believe, the statement, and did act thereon.   Having done so the plaintiff may not change its position to the injury of the defendant by stating that it did not retake possession of the load on N. W. P. No. 4805, and it cannot thus claim the value of said load as against the defendant.

[3]   The appellant claims that the Southern Pacific was the agent of the defendant in the foregoing transactions, and cites *Meyer* v. *Sullivan,* 40 Cal. App. 723 [181 Pac. 847]. As we understand the claim, it is that the contract did not name a place of delivery.   In this we think that the appellant is in error.   The contract did name a place of delivery, to wit, San Francisco, and the most that can be said is that no point was specially designated in San Francisco. Under such facts the defendant was entitled to thereafter select the point and in due time to give the plaintiff notice thereof.   This it did, and both parties acted thereon.   Under these circumstances it is quite clear that the Southern Pacific was acting as the agent of the plaintiff and not of the defendant.

We find no error in the record.   The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.