## THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

JOHN SCHNEIDER *et al.*

*Filed at Mt. Vernon November 11, 1896.*

1. EVIDENCE—*interpretation put upon contract by parties may be inquired into.* Where a contract to deliver coal at a mine is silent as to which party is to furnish cars, evidence that one party assumed that duty, never asking the other to perform it, is proper to show the interpretation put upon the contract by the parties themselves.

2. SALES—*when purchaser under coal contract is in default for not furnishing cars.* Where a purchaser under a contract to take a certain number of cars of coal from a mine per month assumes the duty of furnishing cars, upon which point the contract is silent, his failure to supply enough cars is such a breach of the contract as entitles the seller to recover damages.

3. APPEALS AND ERRORS—*when trial court cannot take case from jury.* Where there is evidence tending to prove plaintiff's cause of action it is not error for the court to refuse a peremptory instruction for defendant.

4. PLEADING—*one count may aver a contract by a reference to another count where it appears.* A pleader who has set out the contract sued on *in hæc verba* in one count of the declaration may aver it in other counts by proper reference thereto, and thus save copying the contract into the other counts, but the practice is not approved.

*Consolidated Coal Co. v. Schneider,* 63 Ill. App. 88, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. ALONZO S. WILDERMAN, Judge, presiding.

CHARLES W. THOMAS, for appellant:

The recovery of damages by a vendor against a vendee for not accepting and paying for goods contracted for, proceeds on the ground that the former has been ready to do his part, and has offered performance of the precedent or concurrent conditions of delivering the goods, which will answer the requirements of the contract in all respects,—in time, quality and quantity,—and confer a good title.   2 Sutherland on Damages, 363.

DILL & SCHAEFER, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action brought by the appellees, John Schneider and others, against the Consolidated Coal Company of St. Louis, to recover damages for a breach of a contract. On a trial in the circuit court before a jury the plaintiffs recovered a judgment for $3500, which, on appeal, was affirmed in the Appellate Court.

The contract upon which the action was predicated was executed on the first day of September, 1893. The coal company was party of the first part and John Schneider and others were parties of the second part. The contract provided: "The said party of the first part hereby leases and sub-lets to the parties of the second part, for the term of eleven months from the date hereof, its coal mine known as 'Reinecke No. 1 Mine,' located near Birkner Station, together with all machinery and appliances thereto belonging. The said parties of the second part contract and agree to operate the said mine in a workmanlike manner, and in accordance with the directions of the superintendent of the party of the first part, so far as the plan of the works is concerned, and to keep the mine, and all the machinery and appliances thereto belonging, in good repair and working order, and to return the same at the forfeiture or expiration of this lease in as good condition as when received; and to furnish the said party of the first part, unless prevented by strikes or circumstances beyond their control, during the months of September, October, November and December, 1893, and January, February and March, 1894, with an aggregate of thirty-six car-loads of lump coal per week, and during the months of April, May, June and July, 1894, an aggregate of twenty-four car-loads of lump coal per week, all at a price of sixty cents per ton of two thousand pounds for screened lump coal, which shall be free from slate and sulphur, and with all the nut coal pro-

duced at said mine, and which must be well screened, at twenty-five cents per ton,—all f. o. b. cars at said mine. The parties of the second part also agree that the above stipulated amounts of coal shall be the entire lump coal product of said mine which will be shipped on railroad cars. The parties of the second part further agree to pay to the party of the first part, as royalty for the said coal and as rent for the use of said mine and machinery, five cents per ton on all lump coal loaded on railroad cars, said payments to be made on said first party's regular pay-days. Railroad weights are to govern as to all coal loaded on cars. It is further expressly agreed that any failure on the part of the parties of the second part to comply with any part of this contract shall authorize said party of the first part to forfeit and terminate the same, and to enter and take possession of said mine and all machinery and appliances thereto appertaining, with or without process of law. And the said party of the first part agrees and contracts to receive from the said parties of the second part the aforementioned amounts of coal, and to pay therefor, on its regular monthly pay-days, the sum of sixty cents per ton for all lump coal and twenty-five cents per ton for all screened nut coal, f. o. b. cars at the said mine."

Upon the execution of the contract appellees took possession of the mine thereunder and commenced mining coal, and continued mining until the last of April, 1894, when the work was suspended on account of a strike that existed in almost all the mines in the country. The strike continued until the last of July. During the strike but little coal was mined or delivered to the coal company.

It will be observed that the contract required appellees to mine and deliver on cars at the mines during the months of September, October, November and December, 1893, and January, February and March, 1894, thirty-six cars of lump coal per week, at the price of sixty cents per ton for screened lump coal and twenty-five cents

per ton for nut coal. It appears from the evidence that appellees were ready and willing and offered to mine and deliver on cars all the coal called for in the contract during the months of September, October, November and December, 1893, and January, February, March and April, 1894, but owing to the failure of the appellant to furnish cars they were prevented from doing so. The theory of the appellees, as we understand the record, is, that appellant was required to furnish cars on which appellees could load all the coal which the contract called for, and as appellant failed to furnish the necessary cars they (appellees) have the right to recover whatever profit they would have made if the cars had been furnished and they had delivered the coal on the cars.

The contract is silent in regard to the party who shall furnish the cars, but the plaintiffs proved by a number of witnesses that before they commenced mining coal under the contract, Emery, the superintendent of the coal company, came into the mine and inquired if they were prepared to fill the contract. They asked him about cars, and he replied: "I will see that you get cars. I will see that they put in six cars a day and I will look to you to fill them." In addition to this testimony it was proven that appellees repeatedly called on the superintendent for more cars, and he never denied that it was the duty of appellant to furnish them, but, on the other hand, he promised to furnish cars or made excuses for appellant's failure to furnish them. It was also proven that at no time while appellees were occupying the mine under the contract did they procure or furnish any cars, but all that were furnished and filled came through appellant. From these facts it is apparent that the construction placed on the contract, both by appellees and appellant, was that appellant was required by the contract to furnish the cars. In the construction of a contract it is always allowable to look to the interpretation the contracting parties place upon it, either contempo-

raneously or in its performance, for aid in ascertaining its meaning, as held in *Vermont Street M. E. Church* v. *Brose*, 104 Ill. 206.  Moreover, it is apparent from the evidence of appellant's sale agent, Crowley, that it was the duty of appellant to furnish the cars.  He testified: "They (meaning the railroad company) had information that a certain number of cars would come from there (the mine in question).  This business was under my control.  The course of business with the railroad company was this: It was notified that we received so many cars from that mine, and they put in cars without orders from the parties."  The meaning of this evidence is obvious.  When the coal company (appellant) had a contract for coal, as they had with appellees, they notified the railroad company of the number of cars the mine was required to deliver, and on this notice the company sent the cars to the mine.  Whether appellant adopted this mode or some other mode was a matter of no consequence.  The result was that the cars were sent to the mine through the direction of appellant.  We think, therefore, it is plain, under the contract, it was the duty of appellant to furnish appellees, at the mine, the number of cars each week called for by the contract.

The contract contains a provision in regard to the delivery of the coal, as follows:  "All f. o. b. cars at said mine,"—which, as the evidence shows, means free on board the cars at the mine.  The fact that appellees were required by the contract to deliver the coal free on board the cars at the mine can have no bearing on the question in regard to whose duty it was to furnish cars.  The furnishing cars at the mine to be filled with coal was an independent matter in no manner connected with the duty of filling the cars.  When the cars were furnished, then it devolved on appellees to fill them free of any expense to appellant, but until the cars were furnished they were required to do nothing except to have the coal ready.  It being the duty of appellant to furnish the cars under the

contract, its failure to discharge that duty was a clear breach of the contract, for which appellees, who were ready and willing to furnish the coal, were entitled to recover.

It is said, however, there was no evidence before the jury upon which any damages could be allowed. This is a misapprehension of the evidence. Schneider testified, (and his evidence was not objected to nor was he contradicted by any other testimony in the case,) that there was a shortage of 513 cars for lump coal and 87 cars for nut coal; that each car when loaded would contain $19\frac{1}{2}$ tons; that there was a net profit of $38\frac{1}{2}$ cents a ton on the lump coal and $2.50 a car on the nut coal. If appellees were entitled to recover for the loss of profits which they would have made had there been no breach of contract on behalf of appellant, here is ample evidence upon which a recovery may be predicated. If, however, on the other hand, appellees are to be regarded under the contract as vendors of merchandise, which they sold to appellant for a certain specified price and appellant failed and neglected to accept the goods at the time and place of delivery, and on account of such failure appellees are entitled to recover as damages the difference between the contract price of the goods and the market price, there is evidence in the record to sustain a recovery upon this theory. The written contract in evidence showed the price appellant agreed to pay for the coal, and appellant's sale agent, Crowley, testified to the market price of coal, as shown by appellant's abstract, as follows: "The market price of coal in East St. Louis from the fall of 1893 up to the strike in 1894 varied from $1.06$\frac{1}{4}$ to $1.12. In October, 1893, it was $1.18$\frac{3}{4}$. In November it was $1.25 and during the winter it was $1.12$\frac{1}{2}$. The freight was forty-five cents."

Whether the appellees were entitled to recover, under the contract, the profits they would have made if appellant had accepted the coal under the contract, or whether

the recovery should be confined to the difference between the contract price and market price of coal at the place of delivery, is a question not presented by this record. The question might have been presented by an appropriate instruction, but no instruction upon this question was asked or given. As respects the amount of recovery, under the repeated rulings of this court that is a question not reviewable here.

The court refused an instruction of appellant directing the jury to find for the defendant; but there was no error in the decision of the court, for the reason there was evidence tending to prove appellees' cause of action, and when such is the case the court is not authorized to take the case from the jury.

It is also insisted that the declaration does not state a cause of action, and the court erred in overruling the motion in arrest of judgment. In the amended declaration, after setting out the contract upon which the action was predicated, the declaration in reference to the delivery of cars on which appellees were required to load the coal was in substance as follows: That on the first day of September, 1893, after the making of the contract, plaintiffs entered into possession of the mine therein mentioned, and by the construction then and there put upon the contract by the parties thereto the defendant assumed the duty of furnishing to plaintiffs, from time to time, the necessary number of railroad cars upon which to load said coal; that by said construction it was the duty of defendant, under the contract, to so furnish the plaintiffs with such necessary railroad cars; that in pursuance of said construction defendant furnished plaintiffs railroad cars on which to load said coal and received from plaintiffs the coal under the said contract; that defendant then and there had control of, and did control, a number of railroad cars that should, from time to time, be delivered at said mine for the purpose of loading said coal, and it was the duty of defendant to furnish plain-

tiffs the necessary number of cars on which to load the coal which plaintiffs were required to furnish to defendant under the contract, to be accepted and paid for by defendant. The insufficiency of the declaration, as we understand the argument, is predicated upon the assumption that the contract required appellees to furnish the coal free on board of cars at the mine, and this made it incumbent upon the appellees to see that the cars were furnished before they could put appellant in default for not accepting the coal. The answer to this position is, that under the contract as construed by the parties it was the duty of appellant, as heretofore stated, to furnish the cars at the mine.

It is also claimed that the court erred in admitting the contract sued on in evidence, for the reason that the third amended count of the declaration, while purporting to set it out *in hæc verba*, did not contain the contract, but merely referred to it in the following words where the contract should appear in the count: "(Here insert said contract as it appears in the original declaration filed in this court.)" The contract, as appears, was set out *in hæc verba* in the original declaration on file with the papers in the case, and while the mode adopted by the pleader in referring to the contract as set out in another part of the declaration cannot be regarded as a model in pleading, yet we do not regard the declaration as substantially bad. Where a contract sued on is set out *in hæc verba* in one count of a declaration, in declaring on the same instrument in another count no good reason is perceived why the pleader may not refer to the count containing the instrument instead of copying the instrument again in the second count. That was substantially the course adopted here.

During the months of May, June and July appellees did not furnish the coal called for in the contract, and for this failure appellant claimed damages. The evidence, however, showed that they were prevented by a strike

which extended over all the mines in the country.   As the contract by its terms relieved appellees from furnishing coal if prevented by a strike, we do not think they were liable for damages for their failure to deliver coal in May, June and July.   After the strike was over coal was furnished as required by the contract.

No substantial error appearing in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*