[Civ. No. 2647.   First Appellate District, Division One.—April 19, 1919.]

GEO. H. C. MEYER et al., Respondents, v. F. J. SULLIVAN et al., Appellants.

[1] CONTRACTS — SALE OF WHEAT "F. O. B." — ACTION FOR BREACH— PLACE OF DELIVERY—EVIDENCE—USAGES AND CUSTOM.—In an action for damages for breach of contract to deliver a cargo of wheat to plaintiffs "f. o. b." a designated steamer at a given port, evidence of the nature of the transaction, and the usages and custom of the trade in such matters, is admissible for the purpose of determining the place of delivery of the wheat contemplated by the parties under the "f. o. b." clause.

[2] ID.—INTERPRETATION OF TERM—PROVINCE OF TRIAL COURT.—In such action, it is the province of the trial court to apply the knowledge gained from the testimony of the witnesses as to the usages and custom of the trade in such matters to the surrounding circumstances

in which the parties were placed, and to find and determine what "f. o. b." the designated steamer implied.

[3] ID.—MEANING OF TERM "F. O. B."—The general rule seems to be that if the agreement is to sell goods "f o. b." at a designated place, such place will ordinarily be regarded as the place of delivery; but the effect of "f. o. b." depends on the connection in which it is used, and if used in connection with the words fixing the price only, it will not be construed as fixing the place of delivery.

[4] ID.—PROVISION FOR BENEFIT OF BUYERS—WAIVER.—A provision in a contract obligating the sellers to transfer the goods agreed to be sold from the dock to the deck of the vessel is in the nature of a covenant for the benefit of the buyers which they can waive.

[5] ID.—EFFECT OF WAR CONDITIONS—PERFORMANCE NOT EXCUSED.— The fact that the war conditions rendered the contemplated means of performance unavailable did not excuse the sellers from the performance of their contracts where the buyers were ready, willing, and able to perform their part of the contract.

[6] ID.—BREACH—MEASURE OF DAMAGES.—In an action for damages for breach of contract to deliver a cargo of wheat, in arriving at the amount of damages suffered by the plaintiffs, it is proper for the court to take into consideration the difference between the contract price agreed to be paid for the wheat by plaintiffs, and the market price, which may be taken as the value, at the agreed time and place of delivery.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Andros & Hengstler, Louis T. Hengstler and Golden W. Bell for Appellants.

McCutcheon, Olney & Willard and J. M. Mannon, Jr., for Respondents.

WASTE, P. J.—This is an appeal by the defendants from a judgment in the sum of $2,613.30, entered in favor of plaintiffs for damages alleged to have been suffered by reason of the breach of defendants to deliver a cargo of wheat to plaintiffs at Seattle during the month of September, 1914.

After negotiations between the parties looking to the purchase and sale of a quantity of wheat, the plaintiffs wrote to defendants two letters, which were as follows:

> "454 California St.
> "San Francisco, Cal., June 26th, 1914.
> "Friday

"Sept. Shipt.

> "Received Jun 27, 1914.
> "Answered ———

"Messrs. F. J. Sullivan & Co.,
   "310 California St., City.

"Dear Sirs: It is hereby confirmed that you have sold us and that we have bought from you, two hundred & fifty (250) long tons of No. 1 White Walla Walla wheat, for shipment in September, doubtless early in September, from Seattle, in double bags, at one dollar, forty three & one-third cents ($1.43 1-3) per 100 lbs. f. o. b. Kosmos steamer at Seattle, with the usual official certificate of the grain inspector to accompany the draft on us from the north.

"We send you this in duplicate. Kindly return one copy to us with your signature.

"We are, dear sirs,

> "Yours very truly,
>    "MEYER, WILSON & Co.

"GM/P.
"Approved:
        "F. J. SULLIVAN & Co.

> "454 California St.,
> "San Francisco, Cal., July 1st, 1914.
> "Wednesday.

"Messrs. F. J. Sullivan & Co.,
   "310 California St., City.

"Dear Sirs: It is hereby confirmed that you have sold us, and that we have bought from you, two hundred & fifty (250) tons of No. 1 White Walla Walla wheat, for shipment in September, doubtless early in September, from Seattle, in double bags, at one dollar, forty one and two-thirds cents ($1.41 2-3) per 100 lbs., f. o. b. Kosmos Steamer at Seattle, you to accompany your invoice for the grain with the usual certificate of the grain inspector.

"We shall in due course give you the marks for this lot, as well as the prior lot of 250 tons for September shipment.

"We send you this in duplicate. Kindly return one copy to us with your signature.

"We are, dear sirs,

"Yours very truly,

"Meyer, Wilson & Co.

"GM/P.

"Approved and accepted:

"F. J. Sullivan & Co."

The letters were duly received by the defendants, who thereupon indorsed their approval upon each of the letters as above appears, and each of the letters, containing the approval of the defendants indorsed thereon, was returned to and duly received by plaintiffs. On the respective dates of the letters, plaintiffs engaged space from the management of the Kosmos line, for the shipment of the wheat referred to, in the steamer of that company, leaving Seattle in September. This fact was not communicated to defendants by plaintiffs, but on July 20th, defendants were directly informed by the Kosmos line that the wheat was to be taken on board the steamer "Karnak," leaving Seattle in September, 1914. Plaintiffs at no time furnished, or designated, or named, any vessel or vessels, or any Kosmos steamer, at Seattle or elsewhere, on board which the wheat would be placed, loaded, or shipped, or to which said wheat should be delivered.

Subsequently, owing to the war conditions then prevailing, the Kosmos line canceled their sailing schedule. On August 13th defendants notified plaintiffs of that fact and requested to know their position with regard to the two contracts for purchase of the wheat. Not receiving a reply to their communication, defendants wrote to plaintiffs again on August 22d, making similar request. In the meantime, wheat had advanced in price. On August 26th, without referring to these letters, plaintiffs informed defendants that the wheat bought from them had been sold, on a c. i. f. basis, to a firm in Valparaiso, not at all desirous of canceling, but, on the contrary, desirous of more business, and requested that defendants make a proposition as favorable as the then higher market would permit, which plaintiffs might cable to its Valparaiso correspondent. This proposition was stated to be "a merely tentative idea advanced without prejudice, and not to be regarded as in any way affecting our [plaintiffs'] rights in the premises." Defendants made no counter-

proposition for either compromise, or cancellation, in the matter, and on September 5th, plaintiffs wrote defendants, stating they would require defendants to deliver the wheat, "in the manner customary on Puget Sound, viz., in warehouse there." Further details of the delivery were referred to in the letter. This communication was followed by another letter on September 8th, in which plaintiffs demanded that defendants deliver "the said five hundred long tons in warehouse at Seattle." On September 16th defendants replied, and, referring to the previous letters from plaintiffs relative to delivery of the wheat, stated that on account of the circumstances mentioned in the correspondence, they must decline to make delivery of the same. The receipt of this letter from the defendants was followed by two letters from plaintiffs, which were personally handed to defendants, demanding, respectively, the fulfillment of each of the contracts for sale of the wheat and suggesting that the delivery might be made to plaintiffs at the warehouse on Arlington dock, Seattle, as that was the usual pier at which the Kosmos steamer loaded, or, if more convenient to defendants, delivery might be made to plaintiffs at any other warehouse in Seattle harbor, where grain was customarily received and loaded on steamers. At the time of handing these letters to defendants, plaintiffs produced and tendered to defendants in gold coin the purchase price of the wheat referred to in the contracts, which tender the defendants declined and refused, basing their action in so doing solely upon the ground that no Kosmos steamer was available at Seattle upon which said wheat could be loaded. The refusal of the tender was followed by a letter dated the last day of September, delivered to plaintiffs, which was as follows:

"September 30th, 1914.

"Messrs. Meyer, Wilson & Co.

"San Francisco, Calif.

"Gentlemen: Referring to your letters of September 22nd, 1914, and your demand for a fulfillment of the contracts mentioned therein, we are now in a position to state positively that, owing to the fact that no Kosmos steamer has been available for shipment in September, we consider the said contracts as cancelled.

"Yours very truly,

"F. J. SULLIVAN & Co.,

"By F. J. S."

After notifying defendants that plaintiffs would hold them responsible in damages for failure to carry out the contracts, plaintiffs brought this action.

The sole issue on this appeal narrows down to an examination of the question: Were the defendants justified in refusing to deliver the wheat, solely upon the ground that no Kosmos steamer was available at Seattle during the month of September, upon which the wheat could be loaded? The answer to the question appears to depend upon the interpretation that shall be placed upon the language in the two contracts, "f. o. b. Kosmos steamer at Seattle," immediately following the price quotation.

Appellants contend that these words (the term, "f. o. b.," meaning "free on board") implied a condition as to the place of delivery of the wheat, and limited such delivery to the deck of a Kosmos steamer, and nowhere else; that the limitation and condition being impossible of fulfillment, they were absolved from the contract. The trial court took the counterview of the respondents, and found that the f. o. b. clauses were used in connection with the price of the wheat, and not the place of delivery; that, in view of the established custom of the trade, prevailing on the Pacific Coast, and which was, and is, well known to the parties, the place of delivery contemplated by them was the Arlington dock in Seattle, the dock at which the Kosmos steamers customarily loaded, and not the deck of the vessel itself; that therefore, plaintiffs' offer to receive the wheat at the dock, coupled with the tender of, and ability to make, full payment of the contract price, was sufficient and full compliance, on their part, of the contract. The court further found that if the said clauses of the contracts implied any covenant on the part of the defendants to transfer the wheat from the dock to the deck of the vessel, such covenant was solely for the benefit of the plaintiffs, and could be waived by them.

[1] In order to determine whether or not delivery was to be made on the deck of the Kosmos steamer, as contended for by defendants, or merely on the Arlington dock, in Seattle, as claimed by plaintiffs, the trial court admitted evidence of the nature of the transaction, and the usages and custom of the trade in such matters. Appellants vigorously attack the findings and conclusions of the court, and particularly its

action in admitting testimony in proof of the custom of the trade.

We are satisfied of the correctness of the trial court's findings in these matters. The fact that the parties to this action have come to such a vigorous disagreement over the meaning of the terms of the contracts is some indication that the court might be compelled to look to other sources of information than the contracts themselves in order to arrive at a proper interpretation of the disputed point. That the evidence of usage and custom was properly considered by the trial court in determining the place of delivery of the wheat contemplated by the parties under the f. o. b. clauses of the contracts is borne out by the authorities. (*Cowas-Jee* v. *Thompson,* 5 Moore P. C. 165, [13 Eng. Reprint, 454]; *Stock* v. *Inglis,* 5 Asp. M. C. 294; *George* v. *Glass,* 14 U. C. Q. B. 514; *Marshall* v. *Jamieson,* 42 U. C. Q. B. 115.)

The admitted evidence fully supports the court's finding that it was and is a general custom, among buyers, sellers, and shippers of wheat in the city of Seattle, and in the city of San Francisco, and, generally, in Pacific Coast ports, "under contracts for the sale of wheat f. o. b. steamer, or f. o. b. designated steamer, for the seller to deliver, and for the buyer to receive and accept the wheat upon the dock along-side of ship's tackle."

R. D. Girvin, a grain merchant on the Pacific Coast for thirty-five years, testified that by sale of grain "f. o. b. steamer," the obligation of the seller is to deliver the grain to the buyer, free of cost, at the ship's tackle, that is, delivery at ship's side ready to be hoisted into the vessel, and not that the seller has to put it on board the vessel. Otto Hillefeld, shipping agent and grain broker on the Pacific Coast for sixteen years, testified that, under a contract of sale "f. o. b. steamer," the custom is for the seller to deliver the goods to the dock, and that neither the buyer nor the seller delivers the goods on the steamer; that the steamship company issues a receipt therefor, and the cost of taking the goods from the ship's tackle, or from the dock, into the steamer is borne by the steamship company, and the dock is the point at which the buyer receives the goods from the seller. R. D. Bird, freight agent, engaged in the business of shipping and the operation of steamers on the Pacific Coast for many years, testified that it is a universal rule, and the custom, to take

delivery on the dock. Other witnesses, including a general agent of the Kosmos line, testified that the shipper had nothing whatever to do with loading the cargo from the dock into the vessel, that work being done by the vessel, or the vessel's agents.

The witnesses on the part of the defendants testified as to the use of the terms f. o. b. and "f. a. s." (free along side) in contracts. The evidence discloses that contracts might be made, between buyer and seller, using either of these terms, although sales f. a. s. seem to be of infrequent occurrence, and not readily made in the community. In both f. a. s. sales and f. o. b. sales, however, the seller of the goods pays the cost of all handling on the dock; and the cost of stevedoring, or transferring the cargo from the dock to the ship, is paid and absorbed by the ship owner from the freight, which in turn is paid by the buyer. The only distinction between the two kinds of sales appears to be as to the time when the responsibility of the seller ends. In the case of f. a. s. sales, it seems to end with delivery on the dock. In the case of f. o. b. sales, the responsibility of the seller appears to end when the commodity is on board ship. The element of cost, to either buyer or seller, does not appear to enter into the matter at all.

[2] It was the province of the trial court to apply the knowledge, gained from the testimony of these witnesses, to the surrounding circumstances in which the parties were placed, and to find and determine what the term "f. o. b. Kosmos steamer at Seattle," as used in the contracts, implied. It duly determined that it was used therein in connection with the price of the grain only, and not as fixing the exact place at which it should be delivered. In arriving at this conclusion the trial court was assisted by the position of the clause in the contracts, used as it was, in connection with the words fixing the price of the wheat sold. [3] The general rule seems to be that "if the agreement is to sell goods 'f. o. b.' at a designated place, such place will ordinarily be regarded as the place of delivery; but the effect of the 'f. o. b.' depends on the connection in which it is used, and if used in connection with the words fixing the price only, it will not be construed as fixing the place of delivery." (35 Cyc. 174; *Neimeyer Lumber Co.* v. *Burlington & M. R. R. Co.,* 54 Neb. 321, [40 L. R. A. 534, 74 N. W. 670]; *Burton* v.

*Nacogdoches Lumber Co.* (Tex. Civ. App.), 161 S. W. 25.)
In *Dannemiller* v. *Kirkpatrick*, 201 Pa. St. 218, [50 Atl. 928],
the contract read: "Bill the cargo of coffee at the same price,
f. o. b. Pittsburgh." It was held that whether or not de-
livery was to be made at Pittsburgh was a question of fact.
To like effect are *Consolidated Coal Co.* v. *Schneider*, 163 Ill.
393, [45 N. E. 126]; *Davis* v. *Alpha Portland Cement Co.*, 134
Fed. 274; *United States Smelting Co.* v. *American Galvaniz-
ing Co.*, 236 Fed. 596. These authorities seem to firmly es-
tablish the rule that the f. o. b. clause may be used solely
with reference to the price. The finding of the court that
the term "$1.43 1-3 per 100 lbs. F. O. B. Kosmos steamer,
Seattle," in one contract, and the like clause in the other, as
between plaintiffs and defendants, must be held to refer to the
price and not to the place of delivery, seems to us to be fully
supported by the testimony.

[4] Appellants attack the court's finding on the second
point, which is, that even if it be assumed that defendants had
agreed and were obligated by the contracts, to transfer the
wheat from the dock in Seattle to the deck of the Kosmos
vessel, that this provision was in the nature of a covenant
for the benefit of the plaintiffs, which they could, and did,
waive. This finding, we believe, should also be upheld.
(*Neill* v. *Whitworth*, 18 Com. B. (N. S.) 435, [144 Eng.
Reprint, 513].) Paraphrasing the language of the case just
cited, we cannot see how it can be of any importance to the
defendants whether they delivered the wheat on the Arlington,
or some other dock in Seattle, as directed by plaintiffs, or on
board a Kosmos steamer, provided such delivery did not
impose on them any additional expense or undue delay. It
seems to be clear to us that, even if the contracts so implied,
it was a stipulation inserted for the benefit of the vendees,
which they could, and, under the facts of this case, did, waive.
That a party to a contract may waive a provision intended for
his benefit, see *Ellsworth* v. *Knowles*, 8 Cal. App. 630, [97
Pac. 690]. Counsel for both sides discuss in their briefs a
recent case bearing upon the subject of the waiver of a cove-
nant, similar to the one under consideration here, to wit:
*Comyn and Mackel* v. *Douglas Fir Exploitation & Export
Co.*, in the United States district court for the northern dis-
trict of California, October 21, 1918. In that case the con-
tract was for the sale of four cargoes of lumber. The vessels

on which the cargoes were to be shipped were designated, and the further stipulation of the contract was, "delivery F. O. B. mill wharf, Knappton, within reach of vessel's tackles and/or on barges A. S. T. [at ship's tackles], mill wharf, Knappton, Washington." One of the vessels, the "W. H. Marston," never came to Knappton. The seller claimed that this was a breach of condition precedent, and that the buyer could not claim the right of delivery on barges, or at the dock, as the contract contemplated the presence of the vessel, "W. H. Marston," ready to receive the lumber, in order to bind the seller to the obligation to deliver. Mr. Justice Van Fleet held that the provision as to the lumber being delivered convenient to the ship's tackle was for the benefit of the purchaser, which he could waive, and was not one on which the defendant might rely.

[5] Defendants contend that both buyers and sellers were excused from performance of the contracts, by reason of the fact that war conditions rendered the contemplated means of performance unavailable; that is, because it was impossible to furnish a Kosmos steamer, both parties were released from all liability in the matter. We cannot agree with such contention. It is admitted that the plaintiffs were at all times ready, willing, and able, and attempted, to perform their part of the contract. There is no showing but that defendants were fully able to deliver the wheat contracted for, and as directed by the plaintiffs, at the place designated.

[6] In arriving at the amount of damages suffered by the plaintiffs, by reason of the breach of the contract, it was proper for the court to take into consideration the difference between the contract price agreed to be paid for the wheat by plaintiffs, and the market price, which may be taken as the value, of the same wheat in Seattle, during the month of September, 1914. The excess of the value of said wheat to the plaintiffs during that time, over and above the amount which would have been due to the defendants under the contract as the purchase price thereof, if it had been fulfilled, was the detriment caused by the breach of the defendants' agreement to deliver. (Civ. Code, sec. 3308.)

We have considered the other points made by the appellants and have examined many cases cited in their briefs. We see no merit in the points presented on this appeal. Neither do we feel justified in attempting to distinguish the

many cases cited by appellants. They are not sufficient, in our judgment, to overturn the legal conclusions arrived at by the trial court on the facts of this case.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 19, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 16, 1919.

All the Justices concurred.