[Civ. No. 2020.    Third Appellate District.—October 20, 1919.]

H. YOSHIZUMI, Respondent, v. PLATT PRODUCE COM-PANY, Appellant.

[1] SALES—DELIVERY F. O. B. BOAT—ACTION FOR BREACH OF CON-TRACT—EVIDENCE OF CUSTOM AND USAGE.—Where the contract for the sale and purchase of certain potatoes provides that said pro-duct is to be delivered f. o. b. boat, at a designated landing, but is silent concerning who is to provide the boat, in an action for breach of contract on the part of the purchaser, evidence of cus-tom and usage is admissible to determine upon whom the burden is imposed of providing a boat upon which the produce can be loaded and to prove that f. o. b. means on the wharf ready for the boat.

[2] ID.—ORDERS BY THIRD PARTIES TO BARGE CAPTAIN—HEARSAY.—In such action, orders given by a third party to the captain of a certain barge which had called at the landing on which plaintiff had delivered the potatoes were not competent to prove either what he said or did at the landing.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Snyder & Snyder for Appellant.

Shelton & Levy for Respondent.

ELLISON, P. J., *pro tem.*—The complaint alleges that on August 11, 1917, plaintiff and defendant entered into a contract in writing whereby plaintiff agreed to sell and de-fendant agreed to buy 540 sacks of potatoes, at the agreed price of three dollars per sack, of 116 pounds each, and

43 Cal. App.—43

that said product should be delivered, starting at the last of the ensuing week, f. o. b., boat, at McDowell Camp, No. 23½, San Joaquin County.

It was further agreed that delivery of said product on board of boat would constitute full and complete acceptance thereof; that plaintiff duly performed all the conditions of said contract and started to deliver said product on the last of the ensuing week, and on August 27, 1917, 540 sacks of said product were on the river bank at said camp, ready for inspection and transportation by the defendant by means of water craft; that it is the definite, well-known, and uniform custom and usage of the purchasers of potatoes in the vicinity of Stockton and on points located on the San Joaquin River and its tributaries to inspect the product while on the bank, and to send water craft to such point to take delivery thereof; that plaintiff notified defendant on August 27, 1917, that said product was on the bank and defendant thereupon, and again on August 31, 1917, assured plaintiff it would send a barge to obtain delivery thereof; that defendant failed to do so prior to September 3, 1917, and on that day plaintiff demanded that defendant take delivery of said produce, and notified defendant that in default thereof plaintiff would sell the same to defendant's account to the best advantage; that on September 3, 1917, a barge belonging to one R. H. Vehmeyer called at said camp, and the agent thereof took possession of said product, loaded it on said barge, and transported it to a warehouse at Stockton; that said Vehmeyer thereupon notified defendant thereof and defendant instructed him not to enter said product in said warehouse in its name; that thereupon plaintiff sold said product for $1.90 per sack, or for the sum of $1,026, to his damage in the sum of $594, for which amount he prayed judgment.

The court found that plaintiff had performed all of the conditions of said contract on his part to be performed and started to deliver said product at the last of the ensuing week, as therein provided, and on August 22, 1917, said 540 sacks of potatoes were on the river bank at said camp, ready for transportation by the defendant.

The court also found that, "It is the definite, well-known, and uniform custom and usage of the purchasers of potatoes in the vicinity of Stockton and on points on the San

Joaquin River and its tributaries to send water craft to points on said river bank to take delivery of such product,'' and, ''in previous transactions with plaintiff, defendant had sent such means of transportation and in respect of the transaction here in controversy made an effort to procure the same.'' Judgment was rendered for the plaintiff for the amount stated in the prayer of the complaint. The defendant appeals.

Over the objection of the defendant, evidence was introduced to support the allegations as to the custom and usage in the matter of getting boats to move produce, and it is appellant's contention that such evidence was inadmissible and that it tended to vary the terms of a written contract, one in nowise uncertain.

[1] The decisions seem to be quite uniform to the effect that proof of custom and usage is admissible to determine upon whom, in a case like this, the burden was imposed of providing a boat upon which the produce could be loaded and admissible to prove that f. o. b. means on the wharf ready for the boat.

It is to be observed that the contract is silent concerning who was to provide the boat. In this particular it is uncertain and indefinite. In *Meyer* v. *Sullivan,* 40 Cal. App. 723, [181 Pac. 847], it is said: ''In order to determine whether or not delivery was to be made on the deck of the Kosmos steamer, as contended for by defendants, or merely on the Arlington dock, in Seattle, as claimed by plaintiffs, the trial court admitted evidence of the nature of the transaction, and the usages and custom of the trade in such matters. Appellants vigorously attacked the findings and conclusions of the court, and particularly its action in admitting testimony in proof of the custom of the trade.

''We are satisfied of the correctness of the trial court's findings in these matters. The fact that the parties to this action have come to such a vigorous disagreement over the meaning of the terms of the contracts is some indication that the court might be compelled to look to other sources of information than the contracts themselves in order to arrive at a proper interpretation of the disputed point. That the evidence of usage and custom was properly considered by the trial court in determining the place of delivery of the wheat contemplated by the parties under the

f. o. b. clauses of the contracts is borne out by the authorities. (*Cowas-Jee.* v. *Thompson,* 5 Moore P. C. 165, [13 Eng. Reprint, 454]; *Stock* v. *Inglis,* 5 Asp. M. C. 294; *George* v. *Glass,* 14 U. C. Q. B. 514; *Marshall* v. *Jamieson,* 42 U. C. Q. B. 115.)

"The admitted evidence fully supports the court's finding that it was and is a general custom, among buyers, sellers, and shippers of wheat in the city of Seattle, and in the city of San Francisco, and, generally, in Pacific Coast ports, 'under contracts for the sale of wheat f. o. b. steamer, or f. o. b. designated steamer for the seller to deliver and for the buyer to receive and accept the wheat upon the dock alongside of ship's tackle,' " (40 Cal. App. 723, [181 Pac. 847].)

In *Consolidated Coal Co.* v. *Schneider,* 163 Ill. 393, 397, [45 N. E. 126] the court said: "The fact that appellees were required by the contract to deliver the coal free on board of the cars at the mine can have no bearing on the question in regard to whose duty it was to furnish cars. The furnishing cars at the mine, to be filled with coal, was an independent matter, in no manner connected with the duty of filling the cars. When the cars were furnished, then it devolved on appellees to fill them free of any expense to appellant; but, until the cars were furnished, they were required to do nothing, except to have the coal ready. It being the duty of appellant to furnish the cars, under the contract, its failure to discharge this duty was a clear breach of the contract, for which appellees, who were ready and willing to furnish the coal, were entitled to recover."

See, also, *Evanston etc. Co.* v. *Castner* (C. C.), 133 Fed. 409.

There was no error in admitting this testimony.

[2] The plaintiff testified that barge No. 11 was at Camp McDowell after the potatoes had been placed on the landing; that he asked the captain to take them on the barge, and he refused, saying he had no orders to do so. The captain, in rebuttal, testified he did not remember whether he made the statement or not. He was then asked if he did not have orders on each trip to bring in all potatoes for the Platt Produce Company that were ready to be loaded. An objection to this and similar questions was sustained and the ruling is assigned as error. When the

witness Lenning was testifying, the defendant, as part of the examination, offered in evidence the order made by the transportation company and given by it to Mr. Lenning, the captain of the barge, directing him where to go on the trip and what products to load. An objection to the evidence was sustained, the court remarking that the witness could use the order that he took with him to refresh his memory. This ruling of the court is assigned as error. The witness, following the remark of the court, stated: "Here is my log-book; just exactly what I did at the landing." The defendant, instead of acting upon the suggestion of the court that the witness might use the order he had with him to refresh his memory and instead of taking advantage of the statement of the witness that his log-book showed exactly what he did, and asking him what he did at the landing, reverted to his original question of what his orders were. The court correctly ruled that his orders from a third party were not competent to prove either what he said or did at the landing. For the purpose for which the orders were offered they were neither relevant nor competent. (*People* v. *Mitchell,* 94 Cal. 550, [29 Pac. 1106]; *Butler* v. *Estrella Raisin Co.,* 124 Cal. 239, [56 Pac. 1040].)

We find no error in the record and the judgment is affirmed.

Burnett, J., and Hart, J., concurred.