[Civ. No. 13666.   First Dist., Div. Two.   Oct. 13, 1948.]

LLOYD JOHNSON, Respondent, v. DOROTHY S. BANTA, as Administratrix, etc., Appellant.

Overton, Selig & Wilson, Paul Overton, Brobeck, Phleger & Harrison and Moses Lasky for Appellant.

Johnson, Harmon, Stirrat & Henderson for Respondent.

GOODELL, J.—This appeal was taken from an order denying a motion for change of place of trial.

After the appeal had been perfected the defendant Guy J. Banta died and an order was made in the trial court and here substituting the administratrix of his estate in his stead.

The action is for alleged breach of contract. The motion was made on the ground that the defendant's residence was in the county of Los Angeles. Respondent resisted the motion on the grounds that the contract was made and was to be performed in Alameda County. These opposing positions define the issue now presented.

The contention that the contract was entered into in Alameda County arises from the following situation: respondent and decedent carried on oral negotiations in Los Angeles looking to the making of a written agreement. A draft of the proposed agreement was then sent by decedent's lawyers to respondent, who had his lawyers make certain changes and rewrite it. Decedent meanwhile had left for the east. Respondent signed two copies of the new draft and his lawyers, whose offices are in San Francisco, mailed them to decedent at Chicago, with a letter in which they said "Kindly sign both copies, keeping one for yourself, and return one to us for Mr. Johnson." Decedent went from Chicago to New York City and while there signed the agreement and mailed one of

the copies in New York City addressed to respondent in Oakland, by whom it was received. Respondent claims (1) that as the document was mailed from New York and not from Chicago and (2) as it was sent to respondent in Oakland and not to his attorneys in San Francisco, as directed in their letter, no contract came into existence until it was received in Oakland. Appellant contends that the contract was made when the signed copy was deposited in the mail in New York City.

In *Ivey* v. *Kern County Land Co.*, 115 Cal. 196 [46 P. 926], one of the leading cases in this state on mutual assent, the plaintiff signed a proposed agreement (treated in the opinion as an offer or proposal) in Bakersfield, which was forwarded by defendant's Bakersfield agent to defendant's San Francisco office for approval and signature. It was signed in San Francisco and returned to the agent in Bakersfield, who delivered the signed copy to plaintiff there. In holding that the contract was made when the agent delivered the document in Bakersfield the court said, "until its actual delivery to the plaintiff, it was in the power and under the control of the defendant, and the acceptance and execution of the proposed contract was not complete until such delivery, and the place of delivery, being the place where the last act is performed which is necessary to render the contract obligatory, is the place where the contract is made." We cite this case because it stresses and illustrates the *last act* rule or test. On the same subject see, also, *Michelin Tire Co.* v. *Coleman & Bentel Co.*, 179 Cal. 598, 604 [178 P. 507], and 1 Williston on Contracts (rev. ed.), § 97. The Ivey case restates the familiar rule respecting contracts made by mail as follows: "In the first of the cases above cited it was held that as soon as the acceptance had gone beyond the control of the party accepting, the contract thus formed became mutually obligatory upon the parties. A deposit of such acceptance in the post office, addressed to the other party, places it beyond his control; . . ."

Thus when decedent mailed the document he placed the matter beyond his control, performed the *last act* in the negotiations, and became irrevocably bound.

The remaining question is whether the fact that decedent addressed the document directly to respondent at Oakland instead of to respondent's attorneys in San Francisco, postponed the making of the contract until the receipt of the document by respondent in Oakland. Section 1582, Civil Code,

provides ''If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted.'' This discussion is simplified by respondent's concession that ''There is no question here of any conditions of acceptance . . . The direction as to mailing was not a condition of acceptance; it was merely an implied limitation on any authority of the defendant to use the mails as an agent of the plaintiff in delivering the contract.''

The proposed agreement was sent to decedent in Chicago through the mail. Under settled rules the use of the same medium for the return communication would be of course ''reasonable and usual'' and no possible prejudice could have been suffered because it was mailed *directly* to respondent. The fact that decedent took the documents to New York and mailed the signed copy from there instead of from Chicago is of no legal consequence since no point is made as to delay in acceptance. Moreover, the offeror knew that decedent was traveling and it does not seem reasonable under such circumstances that any particular place for acceptance could have been within the contemplation of the parties. No authority is cited by respondent in support of this point.

The offer was not burdened with any conditions limiting its acceptance. The decedent having ''put his acceptance in the course of transmission to the proposer'' (Civ. Code, § 1583) by a mode of communication which was ''reasonable and usual,'' consent was ''fully communicated between the parties'' then and there, in New York.

Respondent also contends that the contract was to be performed in Alameda County because it provides that ''The price to be paid by Second Party to First Party for said merchandise shall be [stating figures] f. o. b. Oakland, California.'' The argument is that this provision fixes the place of *delivery* of the merchandise in Oakland, hence Oakland was the place of performance.

In *Meyer* v. *Sullivan,* 40 Cal.App. 723, 730 [181 P. 847], this court said: ''The general rule seems to be that ''if the agreement is to sell goods ''f. o. b.'' at a designated place, such place will ordinarily be regarded as the place of delivery; but the effect of the ''f. o. b.'' depends on the connection in which it is used, and if used in connection with the words fixing the price only, it will not be construed as fixing the place

of delivery.' [Citations.]'' In that case the phrase ''f. o. b. Kosmos steamer at Seattle'' was in the contract and the court admitted parol evidence of custom and usage to aid in determining whether it meant literally ''free *on board*'' the steamer or on the dock near the steamer. On appeal this court pointed out that the trial court had determined that ''f. o. b.'' had been used in the contract ''in connection with the price of the grain only, and not as fixing the exact place at which it should be delivered. In arriving at this conclusion,'' said the court, ''the trial court was assisted by the position of the clause in the contracts, used as it was, in connection with the words fixing the price of the wheat sold.''

In *Boston Iron & Metal Co.* v. *Rosenthal,* 68 Cal.App.2d 564, 568 [156 P.2d 963], the contract provided: ''Price: Thirty Dollars ($30.00) per gross ton, delivered Japan.'' It was contended that its meaning was that landed weights in Japan were controlling. This court in holding otherwise said, ''The trial court was undoubtedly satisfied, as we are, that the words in that collocation were used to refer to and qualify price, and not to indicate the point of delivery or where title was to pass.''

In *Pond Creek etc. Co.* v. *Clark,* 270 F. 482, 486 (followed in *Boston Iron & Metal Co.* v. *Rosenthal*) the court said: ''It is quite generally accepted as the law that where in a contract the price of goods is fixed, and in connection with the price is employed the term 'f. o. b.' at a given point, it means that this refers to and qualifies only the price, and does not indicate that the seller is actually to deliver the goods at the indicated point, and it is construed to have no reference to delivery, but that wheresoever the goods may be shipped the seller will either pay freight to the indicated point, or if the goods are not shipped there, will deduct or permit the purchaser to deduct from the fixed price an amount equivalent to the freight on such a shipment to the point indicated.''

In 1 Williston on Sales (2d ed.), section 280h, pages 622-3, the author lifts the foregoing quotation bodily out of the Pond case. In the Pond case it was held that the words ''basis Chicago'' were used in the contract to refer to and qualify the price, and did not mean or call for delivery at Chicago. That case was followed in *Goodyear etc. Co.* v. *Northern Assurance Co.,* 92 F.2d 70, 72, where the court points out that ''F. O. B. cars New York City'' was not found under the caption ''Place of Delivery'' but ''Instead, the f. o. b. provision was placed under the heading 'Terms,' where it would

seem to have relation to price and to indicate that the cost of loading on cars was to be borne by the seller . . .'' See, also, for similar reasoning, *Orthwein's Sons* v. *Wichita etc. Co.*, 32 Tex.Civ.App. 600 [75 S.W. 364, 365], a case involving the phrase ''delivered Galveston.''

*Craig Brokerage Co.* v. *Goddard Co.*, 92 Ind.App. 243 [175 N.E. 19, 23], follows both *Meyer* v. *Sullivan, supra,* and *Pond Creek etc. Co.* v. *Clark, supra, Lyons Milling Co.* v. *Cusimano,* 161 La. 198 [108 So. 414, 415], also follows the Pond case.

Respondent relies on *Gallo* v. *Boyle Mfg. Co.*, 35 Cal.App. 2d 168 [94 P.2d 1010]. There the court said (p. 170) : ''The purchase order in evidence contains the following language : 'Please deliver to us via Santa Fe, f.o.b. Modesto, the following items . . .' As delivery of an article sold is an essential part of the contract, and as the contract called for delivery in Stanislaus County, it would seem that the foregoing is ample evidence upon which the trial court could make a finding that the contract was to be performed in that county.''

In the instant case ''f. o. b.'' is used in direct connection with price. In the Gallo case it was directly related to delivery.

The rule laid down in *Meyer* v. *Sullivan, supra,* and in the Pond case, *supra,* is controlling.

The record fails to show that the contract was either made or to be performed in Alameda County. Accordingly the defendant was entitled to a change of venue to the county of his residence.

The order is reversed.

Nourse, P. J., and Dooling, J., concurred.