HANSEN–MUELLER CO.,
Plaintiff–Appellant,

v.

Scott GAU, Defendant–Appellee.

Scott Gau, Counterclaimant,

v.

Hansen–Mueller Co., Defendant
to Counterclaim.

No. 12–2290.

Court of Appeals of Iowa.

Aug. 21, 2013.

Andrew Collins of Erickson & Sederstrom, Omaha, Nebraska, for appellant.

Robert Livingston of Stuart Tinley Law Firm LLP, Council Bluffs, for appellee.

Considered by VOGEL, P.J., and DANILSON and TABOR, JJ.

TABOR, J.

The threat of Missouri River flooding during the spring and summer of 2011 prevented grain-dealer Hansen–Mueller from accepting farmer Scott Gau's corn at its Council Bluffs elevator during the delivery time specified in the contract. Hansen–Mueller refused Gau's offer to deliver the corn to an alternative location. When Gau cancelled the contract, Hansen–Mueller sued for damages. The district court granted Gau's motion for partial summary judgment. Hansen–Mueller appeals, arguing Gau did not tender the corn for delivery and did not have the right to cancel the contract. Because we find Gau's requests to deliver his corn to the Council Bluffs elevator or elsewhere met the requirements for tender and because impracticality did not excuse Hansen–Mueller's failure to accept delivery, we affirm.

## I. Background Facts and Proceedings

Hansen–Mueller is a Nebraska company operating a grain elevator in Council Bluffs, Iowa. Scott Gau is an Iowa farmer. On August 26, 2010, Hansen–Mueller contracted with Gau to purchase 7500 bushels of yellow corn to be shipped between June 1 and June 30, 2011, at a price of $4.35 per bushel. Gau called Hansen–Mueller repeatedly during the month of June 2011 requesting to deliver the corn. But because of the threat of impending flooding in and around the area of the grain elevator, Hansen–Mueller refused to accept the corn delivery, claiming storage at this facility became impractical. Gau offered to deliver the corn to another Hansen–Mueller elevator but Hansen–Mueller refused. Hansen–Mueller accepted other deliveries of grain at the Council Bluffs facility for the purposes of blending with its supply so the company could remove the grain on hand.

On July 18, 2012, Gau unilaterally cancelled the contract in writing, stating the contract was void "[b]ecause Hansen–Mueller failed to take delivery of the corn within the shipment period designated by the contract." Gau stored the corn until he sold it in October 2011 for $6.10 per bushel, realizing a $13,125 profit.[1]

On August 19, 2011, Hansen–Mueller filled a petition requesting damages of

---

1. ($6.10/bushel—$4.35/bushel) × 7500 bushels = $13,125.00 ($1.75 profit/bushel).

$22,425—"the difference between the parties' contract price and the market price on the date [Gau] repudiated the contract." Gau responded, asserting an affirmative defense that Hansen–Mueller breached the contract by not accepting Gau's delivery, thus entitling Gau to cancel the contract. Gau also counterclaimed to recover "damages for storage and transport of the contract corn" incurred because of Hansen–Mueller's breach.

Gau filed a motion for partial summary judgment[2] on April 23, 2012. Hansen–Mueller subsequently filed a motion for summary judgment. After the court denied the motions on August 21, 2012, both parties filed motions to reconsider.

On November 16, 2012, the district court granted Gau's motion for summary judgment. The court held because Hansen–Mueller refused to accept Gau's delivery and the parties' contract did not include a clause extending the time for delivery in such cases, Gau was justified in cancelling the contract. Hansen–Mueller filed a timely notice of appeal.

## II. Scope and Standard of Review

 We review the district court's grant of summary judgment for the correction of errors at law. Iowa R. Civ. P. 6.907; *Margeson v. Artis*, 776 N.W.2d 652, 655 (Iowa 2009). Summary judgment is appropriate when the record shows no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3). We view the record in the light most favorable to the non-moving party. *Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013). We also review the district court's interpretation of statutory terms for the correction of legal error. *Bank of*

*the West v. Kline*, 782 N.W.2d 453, 457 (Iowa 2010).

## III. Analysis

### A. Did the District Court Err in Finding Gau Tendered the Corn for Delivery to Hansen–Mueller?

Hansen–Mueller first contests the summary judgment ruling by arguing Gau never tendered the corn for delivery. Hansen–Mueller maintains its obligation to accept delivery was contingent on Gau physically bringing the corn to its facility or extending a written offer of performance. Hansen–Mueller contends Gau did "nothing more than [inquire] regarding deliver[y] of the [c]orn."

Gau asserts his phone calls accomplished tender by notifying Hansen–Mueller of his intent to deliver the corn between June 1 and June 30. He also emphasizes his offer to deliver the corn to another Hansen–Mueller facility as a substitute means of performance.

Sales of grain are governed by Article II of Iowa's Uniform Commercial Code (UCC). *See* Iowa Code ch. 554 (2011); *Bartlett Grain Co., LP v. Sheeder*, 829 N.W.2d 18, 23 (Iowa 2013) (explaining grain is a good, but clarifying that article 2 does not eliminate common law of contracts); *see also Nora Springs Co-op. Co. v. Brandau*, 247 N.W.2d 744, 747 (Iowa 1976); *S & S, Inc. v. Meyer*, 478 N.W.2d 857, 861 (Iowa Ct.App.1991).

 As Hansen–Mueller notes, Gau's tender of delivery was a condition of its duty to accept the goods. *See* Iowa Code § 554.2507. Tender entitles the seller to acceptance of the goods. *Id.* The Iowa UCC provides:

---

**2.** Gau's partial summary judgment motion related only to Hansen–Mueller's claims against

him. The district court has yet to address Gau's counterclaim for damages.

Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable the buyer to take delivery. The manner, time, and place for tender are determined by the agreement and this Article and in particular,

a. tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession; but

b. unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods.

Iowa Code § 554.2503(1); *accord* UCC § 2–503. Tender is short of delivery. *See Sand Seed Serv., Inc. v. Bainbridge*, 246 N.W.2d 911, 912 (Iowa 1976) (finding the seller "was not required to actually haul the corn to plaintiff-elevator" to make a tender but must make more than a mere inquiry regarding delivery); *accord Holt v. Brown & Co.*, 63 Iowa 319, 19 N.W. 235, 237 (1884); *see also Uchitel v. F.R. Tripler & Co.*, 107 Misc.2d 310, 434 N.Y.S.2d 77, 79 (N.Y.Sup.App.Term 1980) (holding tender as defined in section 2–503 does not require actual physical handing over of goods); Lary Lawrence, 3A Lawrence's Anderson on the Uniform Commercial Code, § 2–503:6 (3d. ed.) (articulating tender as "such performance by the tendering party as puts the other party in default if he fails to proceed in some manner"). The seller may still tender the goods even if the buyer refuses to accept the goods. *See Great W. Sugar Co. v. World's Finest Chocolate, Inc.*, 169 Ill.App.3d 949, 120 Ill. Dec. 238, 523 N.E.2d 1149, 1155 (1988) (awarding the seller damages for the buyer's failure to accept sugar when it was undisputed that Great Western had sugar in its possession to be delivered); *Bartlett & Co., Grain v. Curry*, 1 Kan.App.2d 242,

563 P.2d 1096, 1102 (1977) (concluding the seller tendered the goods but the buyer failed to "furnish facilities reasonably suited to the receipt of the goods" when refusing wheat because the elevators were full).

■ It is undisputed Gau was prepared to deliver 7500 bushels of corn between June 1 and June 30, as required by the contract. And although mere inquiry is insufficient to meet the requirements of section 554.2503, Gau tendered the corn because he did more than inquire about delivery. *Cf. Sand Seed Serv.*, 246 N.W.2d at 912; *Holt*, 19 N.W. at 237 (recognizing a written offer to perform as another method of tender). Gau made repeated phone calls to Hansen–Mueller asking to deliver the corn, even offering to transport the grain to another facility when the elevator rebuffed his requests to bring the corn to Council Bluffs. Because Gau's actions rose above mere inquiry—placing the grain at Hansen–Mueller's disposition and providing the elevator the notification reasonably necessary to enable the company to take delivery—we affirm the district court's finding that Gau tendered the corn. *See* Iowa Code § 554.2503.

## B. Did the District Court Err in Finding Gau Properly Cancelled the Contract?

Hansen–Mueller argues even if Gau did tender the corn for delivery, it did not breach the contract because delivery became impracticable due to the threat of flooding. Alternatively, Hansen–Mueller argues we should remand this case to determine what " 'substitute method of delivery' might have been available."

■ The UCC deals with the situation where without fault of either party the agreed upon unloading facilities are not available. *See id.* §§ 554.2614(1), .2615(1); *S & S, Inc.*, 478 N.W.2d at 861 (reading section 554.2614(1) as requiring change in

place of delivery as commercially reasonable substitute as long as neither party was at fault). Under section 554.2614(1), to invoke the doctrine of impracticability, Hansen–Mueller would need to show a commercially reasonable substitute was not available. Buyers are not entitled to excuse the lack of performance under section 554.2615 where the buyer does not offer any available substitute method of delivery under section 554.2614. *Nora Springs Co-op. Co.*, 247 N.W.2d at 749 (noting section 554.2615 incorporates substituted-performance requirements of section 554.2614). In other words, "[e]ven though [the buyer] had originally expected to meet its obligations in a particular way it was obligated to attempt to secure an alternative means of performance." *Id.* (internal quotation marks omitted). Failure of one method of delivery when another is available does not allow for the defense of impracticability unless the increased cost "alters the essential nature of the performance." *Id.* at 748; *see* Iowa Code § 554.2615, cmt. 4; *see also Neal–Cooper Grain v. Tex. Gulf Sulphur Co.*, 508 F.2d 283, 293–94 (7th Cir.1974).

■ The difference between the application of substitute performance, section 554.2614, and impracticability, section 554.2615, is "whether the failure or impossibility of performance arises in connection with an incidental matter or goes to the very heart of the agreement." *See* Iowa Code § 554.2614(1), cmt. 1; *compare Meyer v. Sullivan*, 40 Cal.App. 723, 181 P. 847, 850 (1919) (applying UCC § 2–614 and entitling seller to a substitute method of delivery when the war cancelled the contracted steamer's sailing schedule) *with Int'l Paper Co. v. Rockefeller*, 161 A.D. 180, 146 N.Y.S. 371, 374 (N.Y.App.Div. 1914) (applying UCC § 2–615 and excusing performance when the trees to be sold were destroyed by fire); *see also Transat-*

*lantic Fin. Corp. v. United States*, 363 F.2d 312, 319–20 (D.C.Cir.1966) (denying an excuse of impracticability when the Suez Canal closed changing the contracted delivery route but an alternative route was available, even though more expensive).

■ When the buyer breaches the contract by refusing to accept the contracted good and the excuse of impracticability is unavailable, the aggrieved seller may cancel. *See* Iowa Code § 554.2703; *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 42 (Iowa 1977) (holding the seller was authorized to cancel when the buyer rejected the delivery of grain); *see also Farmers Union Grain Terminal Ass'n v. Hermanson*, 549 F.2d 1177, 1182–83 (8th Cir.1977) (holding grain seller entitled to cancel a contract where the sellers were able and willing to deliver grain but buyer refused grain); *Swope Co. v. Harbin Lumber Co.*, 134 Ga.App. 519, 215 S.E.2d 283, 285 (1975) (approving seller's cancelation of a contract with a lumber buyer who refused to accept delivery); *Mott Equity Elevator v. Svihovec*, 236 N.W.2d 900, 908 (N.D.1975) (approving the seller's right to cancel the contract when the buyer refused delivery of spring wheat).

■ Hansen–Mueller breached the contract because an alternate method of delivery was available—Gau's offer to transport the grain to another facility—and the substitute did not "alter the essential nature of the performance." *Nora Springs Co-op. Co.*, 247 N.W.2d at 748; *see* Iowa Code § 554.2614(1), cmt. 1; *cf. Meyer*, 181 P. 847 at 850, *and Int'l Paper Co.*, 146 N.Y.S. at 374. The flood near the Council Bluffs elevator was "an incidental matter" much like a change in a delivery route. *Meyer*, 181 P. 847 at 850; *Transatlantic*, 363 F.2d at 319–20. Regardless of which substitute method would have been "commercially reasonable," Hansen–Muel-

ler breached the contract because it failed to accept the grain delivery before the contract's expiration[3] and accept the available substitute. *See, e.g., Tower City Grain Co. v. Richman,* 262 N.W.2d 22, 24 (N.D.1978). Consequently, Gau had the right to cancel the contract because of the breach. *See* Iowa Code § 554.2703. Because the record discloses no evidence showing Hansen–Mueller's effort to arrange substitute performance, we find no reason to remand the case for the district court to determine whether a commercially reasonable substitute existed. *See Nora Springs Co-op. Co.,* 247 N.W.2d at 748. Because Hansen–Mueller cannot rely on the excuse of impracticability and did not arrange substitute performance, such as delivery to another location, Hansen–Mueller breached its obligation to accept delivery entitling Gau to cancel the contract.

**C. Did the District Court Err in Denying Hansen–Mueller's Motion for Summary Judgment?**

Because we hold the district court did not err in finding Gau tendered the corn to Hansen–Mueller and Gau properly cancelled the contract, we also hold the district court did not err in denying Hansen–Mueller's motion for summary judgment. Accordingly, we affirm the district court's grant of Gau's motion for partial summary judgment and remand for further proceedings regarding Gau's counterclaim.

**AFFIRMED AND REMANDED.**

---

**3.** On appeal, neither party disputes that time was of the essence. *See SDG Macerich Prop. v. Stanek Inc.,* 648 N.W.2d 581, 586 (Iowa 2002) (recognizing when parties name a specific time for performance, they have made time of the essence).