O’NIELL, C. J.
 

 This suit is to recover a loss alleged to have been suffered by the plaintiff’s having to sell on the open market a carload of flour shipped to-the defendant and rejected by him on the ground that it was not what he had ordered. The civil district court rejected the plaintiff’s demand. The court of appeal reversed the judgment, and gave the plaintiff judgment for the amount sued for. The case is before .us on a writ of review.
 

 The only question is whether the defendant’s refusal to accept the shipment was justified by the fact that the flour was the product of a mill in Hudson, Kan., instead of being, as the defendant expected it to be, the product of the plaintiff’s mill in Lyons, Kan.
 

 The defendant is an extensive manufacturer of macaroni, in New Orleans. It requires a very high-grade flour — what the experts call “strong” flour — from hard wheat, and having' a high gluten content, to make macaroni. The defendant had no use for any other kind of flour, and would buy no other. He had bought such flour from the plaintiff’s sales representative, J. S. Waterman & Co., in New Orleans, the flour being known as the Lyons Milling Company’s “Telegram” brand, manufactured at the plaintiff’s mill at Lyons, Kan., which had given great satisfaction. J. S. Waterman
 
 &
 
 Co. had also sold to the defendant a brand of flour represented to be of the same grade as the “Telegram” flour, but branded “Rosebud,” which was shipped from Hudson, Kan., and, which proved to be .unfit for the manufacture of macaroni. Therefore, when the defendant gave J. S. Waterman & Co. the order for the carload of “Telegram” flour, which is the subject of this lawsuit, he specified, and the seller agreed, that the flour should come from the Lyons Milling Company’s mill at Lyons, Kan., and not from any other place. The defendant and the members of the firm of J; S. Waterman & Co. believed, and so testified — and there is no evidence contradicting their testimony— that the process of milling flour fit for making macaroni was better in some than in other mills, and that the wheát grown in some parts of Kansas was better in that respect than the wheat grown in other parts of Kansas. At all events, the defendant and J. S. Waterman & Co.' knew that the “Telegram” flour made at the Lyons Milling Company’s mill at Lyons, Kan., was desirable for making macaroni, and the defendant was
 
 *201
 
 not willing to take a chance on any brand oí flour milled elsewhere. For that reason, the agreement was — as testified by the defendant and admitted by the members of the firm of J. S. Waterman & Co. — that the flour ordered by the defendant was to come from the Lyons Milling Company’s mill at Lyons, Kan.
 

 J. S. Waterman & Co. forwarded the order by wire to the Lyons Milling Co. for approval, and the latter confirmed the sale by letter addressed to the defendant. The telegram was not offered in evidence. The letter of confirmation, on a printed form, is' as follows, as far as it is pertinent, viz:
 

 “We confirm sale to you by wire from J. S. Waterman & Co. and have entered order for shipment of: 310 barrels Telegram flour at $11.10 basis 98 pound Cottons per barrel f. o. b. Lyons, freight allowed, basis rate effective above date.
 

 “Terms: Arrival Draft.
 

 “Time of Shipment: Immediate. * * *
 

 “It is understood that there are no conditions, representations, or warranties, verbal or otherwise, and that there shall be no assignment or cancellation of this contract, except as herein stated, and no agent or representative has authority to modify the printed terms of this contract.”
 

 The defendant and the members of the firm of J. S. Waterman & Co. testified that they interpreted' the expression in the letter of confirmation, “f. o. b. Lyons, freight allowed,” to mean that the flour would be shipped from Lyons, and that1 the shipper would pay the freight to New Orleans. Another merchant in ¡New Orleans testified that any intelligent flour buyer would understand the stipulation, f. o. b. a given point, to mean that the flour would be milled at and shipped from that point; and an experienced railroad freight agent testified that, in railroad parlance, f. o. b. a given point meant the point of origin of the shipment. It appears, therefore, that, whether right or wrong, the, defendant’s and J. S. Waterman & Co.’s interpretation of the expression in the letter of confirmation, “f. o. b. Lyons, freight allowed,” was not an unreasonable interpretation, particularly as the letter of confirmation was not the origin of the contract but merely a confirmation of a verbal contract in which it was stipulated that the flour would come from Lyons, Kansas.
 

 When the shipment arrived in New Orleans, and the defendant received a “freight notice” from the railroad company, he observed on the notice that the car was “waybilled from Hudson, Kan.” He immediately notified J. S. Waterman & Co. that he would not accept the flour, because it was not shipped from the Lyons Mill, as stipulated in the contract. J. S. Waterman & Co. acknowledged that the flour was not what the defendant had bought; and they wired the Lyons Milling Co. that he would not accept the flour, for the reason stated. The Lyons Milling Co. replied that the flour was of the same quality as the “Telegram” flour milled at their Lyons Mill, and that the contract did not require them to ship the flour from Lyons. The defendant then offered to accept the flour, if the plaintiff would allow samples of it to be tested, and if it showed the gluten content required for making macaroni; but the plaintiff refused to allow the tests to be made. The defendant then proposed that, if the plaintiff would ship a carload of “Telegram” flour from the plaintiff’s mill at Lyons, Kan., he would accept it without test or inspection, at the price stated in the contract, notwithstanding the market price had declined. The plaintiff refused that offer, and insisted upon the defendant’s accepting the flour from Hudson, Kan., without inspection. The defendant refused, and the plaintiff sold the flour on the open market for $460.56 less than the contract price. A firm in Kansas City bought the flour, and afterwards sold it to J. S. Waterman & Co. They tested the flour for its gluten content or “strength,” and fitness for making macaroni, and found
 
 *203
 
 it to be, as they said, “very soft and weak,” of low gluten content, and unfit for making macaroni. It was therefore not as high-grade flour as the “Telegram” brand, milled at Lyons, Kan. X S. Waterman & Oo. sold the flour at a loss to bread bakers, and had complaints about the quality of it.
 

 The plaintiff did not own a mill at Hudson. The flour that was shipped to the defendant from Hudson was milled at the plant of the Stafford County Flour Mills Company. The plaintiff claims to have operated the Stafford Company’s mill when this flour was manufactured, but there is some doubt whether the plaintiff really operated the mill or merely bought the output for three months "during which this flour was turned out by the Stafford mill. That, however, is of little or no importance beside the fact that the flour was not shipped from the plaintiff’s mill at Lyons, Kan., and was therefore not what the defendant had ordered.
 

 The Court of Appeal rested its decision upon the opinion that the expression “f. o. b. Lyons,” in the plaintiff’s letter of confirmation was not subject to the interpretation that the shipment would come from Lyons. The expression, f. o. b. a given point, in a contract for the sale and shipment of goods merely designates the place at which the shipper is to deliver the goods, at his own expense, to the carrier, and it means that the buyer is to pay all further costs of delivery. Unless otherwise qualified or explained, the stipulation, f. o. b. a given point, merely refers to and fixes the price at which the goods are sold, and does not require the seller actually to ship the goods from that point. Pond Creek Mill
 
 &
 
 Elevator Co. v. Clark (C. C. A.) 270 P. 482; A. J. Neimeyer Lumber Co. v. Burlington & Mo. River Railroad Co., 74 N. W. 670, 54 Neb. 321, 40 L. R. A. 534; Burton & Beard v. Nacogdoches Crate & Lumber Co. (Tex. Civ. App.) 161 S. W. 25; Maddaloni Olive Oil Co. v. Aquino, 180 N. Y. S. 724, 191 App. Div. 51; Union Bleaching
 
 &
 
 Finishing Co. v. Barker Fuel Co., 117 S. E. 735, 124 S. C. 458; Partin & Fugate v. Harkins (Tex. Civ. App.) 257 S. W. 571, 23 R. C. L. 1337 (section 159) and 1380 (section 203); 26 C. J. 745.
 

 In this instance, the stipulation “f. o. b. Lyons” was followed immediately by the qualifying expression “freight allowed,” which, all parties admit, meant that the shipper would pay the freight to New Orleans, the point of destination. Therefore the expression “f. o. b. Lyons” did not have the usual meaning that the shipper would load the shipment free on board cars at Lyons and that the buyer would pay all further freight and delivery charges. If the stipulation “f. o. b. Lyons, freight allowed” was intended merely to regulate the price by saying who should pay the freight, and if it had no reference whatever to the point of origin of the shipment, it would have been better said “f. o. b. New Orleans.” It is very probable that the plaintiff in this case did not intend to stipulate that the flour should be shipped from the mill at Lyons, Kan.; but it is certain that the defendant and the members of the firm who, as plaintiff’s representative, had sold him the flour, so understood the stipulation in the plaintiff’s letter confirming the sale; and it ycan hardly be denied that the stipulation was apt to convey that meaning. The stipulation, as the defendant understood it, was an important condition, without which he would not have entered into the contract; and, if he was wrong in his understanding of the stipulation, it was not his fault.
 

 “In a doubtful case the agreement is1 interpreted against him who has contracted the obligation.” R. C. C. art. 1957.
 

 “But if the doubt of obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.” R. C. C. art. 1958. '
 

 
 *205
 
 “The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him.” R. O. C. art. 2474.
 

 The letter confirming the contract of sale was prepared by the seller on a printed form furnished by the seller. In such cases, particularly, ambiguities are deemed to be the fault or negligence of the party who prepared the contract, and are construed against him.
 

 The paragraph, in the letter of confirmation, declaring that there were no conditions, representations, or warranties, verbal or otherwise, was printed in very small type, and was not likely to be read. Assuming, though, that the defendant did read or should have read that clause in the letter of confirmation, it did not contradict the written stipulation that the flour was to be shipped “f. o. b. Lyons, freight allowed,” from which the defendant. understood that the flour was to be shipped from Lyons. When a written stipulation in a contract made on a printed form conflicts' with a general printed stipulation, the written stipulation, having been made subsequent to and with more particularity than the printed stipulation, must prevail over it.
 

 The plaintiff was not obliged to accept .the defendant’s proposal that .the plaintiff allow the flour to be tested, or to ship a carload of flour from the Lyons mill at the same price, because the error or misunderstanding of the parties permitted either of them to avoid the contract. R. C. C. art. 1881. But the conduct of the defendant in that respect showed that he was in good faith, and that his insisting upon having “Telegram” flour from the Lyons mill, or flour of the same grade and quality, was not a mere whim or pretext for avoiding the contract. And that is important, because article 1842 of the Civil Code declares that an error with regard to a thing that is the subject of a contract does not invalidate the contract, unless the error bears upon the substance or some substantial quality of the thing.
 

 The defendant had a reason, which, to him, was a good and substantial reason, for refusing to accept without inspection any other flour than the “Telegram” flour made at the Lyons mill, and that is all that was necessary to make the stipulation a vital condition of the contract. It was not necessary that the buyer should state in the contract, or should have explained to the seller, his reason for the stipulation that the-flour should be shipped from a particular place. Held v. Goldsmith, 96 So. 272, 153 La. 598.
 

 The judgment of the Court of Appeal is annulled, and the judgment of the civil district court, rejecting the plaintiff’s demand, is reinstated, and made the judgment of this court; all at the cost of the plaintiff.
 

 OVERTON, J.. concurs in decree.