ELLIS, Judge.
General Insulation Company, Inc., a concern engaged in the business of furnishing insulation for homes, instituted this action against defendant,William Chapman Wilson, to recover $450 allegedly due under a written contract between the aforesaid parties.
Plaintiff, General Insulation Company, contends that sometime in July of 1959 (the contract was not dated), defendant entered into a written agreement with plaintiff to the effect that plaintiff was to install insulation in the attic of defendant’s home with the following specifications:
“Treatment of the entire attic with 4 inches of bonded Thermo-cell insulation to factory specifications.”
Plaintiff further contends that the insulation was installed and defendant refuses to pay the sum of $450, which was to be payable in 36 monthly installments of $14.78 to begin on August 20, 1959.
Defendant, in his answer, admitted that he signed the contract sued upon, but contends that the insulation furnished was not of the type previously exhibited to him and agreed upon; that the insulation furnished was a “blown type” and he had expressly required a mat or bat type insulation. Defendant further alleges that the representations of plaintiff as to mat type insulation were false and fraudulent and reconvened for damages to hides, heads, materials, and other objects used in his taxidermy business, and allegedly ruined by the blown type insulation.
From a judgment rejecting plaintiff’s demands, plaintiff has prosecuted this appeal. Defendant, plaintiff in reconvention, neither appealed nor answered the appeal in this case and therefore the reconven-tional demand will not be considered.
From the record, it appears that two salesmen of plaintiff, Merle H. Stamp and Walter L. George, called upon defendant in an attempt to obtain a contract to insulate defendant’s ceiling in his home. Merle H. Stamp testified in the trial of the case to the effect that he had fully explained the blown type thermo-cell insulation that defendant was to receive and *921 that there was never any mention of mat type insulation. On direct examination, he testified that General Insulation Company sold only one type of insulation (thermo-cell) and had never handled mat type insulation. Quoted portions of Stamp’s testimony on direct examination are as follows:
“Q. Do you know anything about mat-type insulation? A. Yes.
“Q. Has your company ever handled mat insulation to your knowledge ? A. No.
"Q. Did you ever have any discussion with Mr. Wilson with reference to any other method of insulation, other than with a pneumatic pump? A. No, I did not.
“Q. Did you demonstrate to him any type of mat insulation? A. No.
“Q. Sir, does your company sell only one type of insulation? A. The company or this office?
“Q. This particular office here in Baton Rouge? A. No, we sell only Thermo-Cell.”
On cross examination, Stamp testified:
“Q. You didn’t sell rock wool insulation? A. No.
“Q. You didn’t sell Fiberglas insulation? A. Well, some rock wool and some Fiberglas was sold, but the sales force was selling Thermo-Cell.
“Q. Which is it now? I’m not sure. I want to understand if you only sold Thermo-Cell or if you sold other kinds of insulation? A. Well, I have sold since I’ve been here a number of jobs of Fiberglas.
“Q. I’m talking about Building Insulators of Baton Rouge, Incorporated. On the date you had your dealing with Mr. Wilson, as I understand your testimony up until now, only sold one kind of insulation and that was Ther-mo-Cell insulation, is that correct, or am I wrong in interpreting your testimony? A. They quit selling Fiberglas and rock wool but what date I don’t know.
“Q. But you are positive that at the time you dealt with Mr. Wilson the only thing they were selling was Thermo-Cell? A. As far as I remember, yes.
“Q. You had no discussions whatsoever with Mr. Wilson concerning mats, bats, blankets or anything other than the pneumatic pump? A. No.
“Q. As a matter of fact, your company did not install insulation in any other way? A. No. They did not install it in any other way.
“Q. As I understand it, you had no discussion whatsoever with Mr. Wilson concerning mats, bats, blankets or anything, other than pneumatically pumped insulation? A. With reference to Thermo-Cell there,—
“Q. Excuse me. I’m not speaking with reference to Thermo-Cell. As I say, as I understand it you had no discussion with Mr. Wilson concerning any kind of insulation in mats, bats, blankets or anything other than blown pneumatically into his attic? A. No.
“Q. Had no such conversation at all? A. Not that I can recall.
“Q. As I understand your testimony your company didn’t put any kind of insulation in attics except Thermo-Cell and they didn’t put it in in any fashion except blowing it in? A. I prefaced that by saying that they did and they discontinued and as to what date I didn’t know. When those ads were running in the paper they were installing Fiberglas, I believe, and some rock wool.
“Q. I believe you said that the ads ran about the time you had your deal *922 ings with Mr. Wilson. Didn’t you just say that ? A. No, I said that they ran ads.
“Mr. Avant: Miss Myrtle, read the question about ‘At or about the time you had your dealings with Mr. Wilson.”
Clerk Read: “At or about the time that .you had your dealings with Mr. Wilson, did Building Insulators of Baton Rouge, Incorporated, run ads in local newspapers about their services and what they did?
“Q. I asked you if this wasn’t such ad and you said it was. Now, this ad says that people- who deal with your company have the choice of blown-in, batting, blankets, reflect, choice of Fiberglas, rock wool, Thermo-Cell and Aluminum foil. Now, which is correct, Mr. Stamp, did they have those choices or did they have only the choice of blown in Thermo-Cell insulation? A. As to dates I’m not too sure, but I do know that from those ads many Fiber-Glas and rock wool jobs were installed.
******
“Q. And the matter of fact is your company didn’t even put in bats at that time? A. They never installed any in ceilings at that time. I don’t know about dates. However, they ttsed to put them in walls.
“Q. And as I understand it, if Mr. Wilson had' wanted bats he couldn’t have gotten it? A. Yes, if they had them at that time he could have. When the ad ran I don’t know what that date was. I don’t remember.
******
“Q. Now, you say you made this demonstration and showed Mr. Wilson these pictures and so forth, right? A. Yes.
“Q. Now, isn’t it a fact, Mr. Stamp, that the only thing you showed Mr. Wilson was three little boxes about that long and about that wide and about that thick that purported to have three different types of insulation materials in them, one rock wool, the other Fiberglas and the other Thermo-Cell. Isn’t it a fact that that is the only thing you showed Mr. Wilson, those three little boxes? A. No, I used this, the sales manual.
“Q. You did show him three such little boxes though? A. Yes, the insulation we demonstrated was in boxes.
“Q. And did you not show those boxes to him for the purpose of having him choose which one of those three types of insulation material he wanted to have put in his house? A. Yes.
“Q. Well, if they didn’t sell anything but Thermo-Cell, as you have already testified, why did you show him rock wool and the other stuff to let him make his selection ? A. How else could he decide what type insulation he wanted ?
“Q. How could he decide if you weren’t selling but one kind? A. If we weren’t at the time he could decide to buy it from someone else.”
From the above quotations of Stamp’s testimony, it is obvious that little credibility can be given to his statements. Mr. Stamp first testified that plaintiff company had never handled any type insulation other than “thermo-cell.” Also, he testified that plaintiff company did not handle bats or blankets of insulation. When confronted with an ad by plaintiff company, admittedly run about the time that the present contract was entered into advertising glass fiber, rock wool, thermo-cell, and aluminum foil with a choice of blown-in, batting, blankets or reflective, Mr. Stamp changed' his testimony to the effect that bats were never installed in ceilings.
When questioned about his sales presentation to defendant, Mr. Stamp first testified that he had used a sales manual *923 and had not demonstrated different types of insulation located in "three small boxes.” Then, he testified that he had shown defendant the “three small boxes” but only for the purpose of demonstrating three different types of insulation. Since he had previously testified that the plaintiff company only sold “Thermo-Cell,” he then explained that other types of insulation were shown in that if a customer did not like “Thermo-Cell” he could buy insulation from someone else. Considering this testimony in its most favorable light, it seems far-fetched to say the least.
The only other witness to testify on behalf of plaintiff was Bert Selly, the vice-president and sales manager of General Insulation Company. Mr. Selly’s testimony was to the effect that plaintiff company was engaged in selling bat type insulation at the time the contract with defendant was entered into. He further-admitted that plaintiff company had run advertisements of mat or bat type insulations.
Defendant, Wilson, and his wife testified to the effect that Wilson had expressly informed both Stamp and George that he did not want blown insulation; that he used his attic to store mounted species of animals in his taxidermy business; and that both Stamp and George assured them that the insulation would be mat type. Wilson also testified that he had' informed the salesman that he was not financially able to pay for the insulation but that Stamp would not date the contract, and make the first two payments up until August 20; and if payment could not be made then, further arrangements could be made. Stamp denied having made such a proposition but testified that George had made the offer.
Defendant further testified that an express condition of the contract was that he was to be notified when the workmen would commence the job; but that plaintiff company sent its men to insulate when he was at work and absent from the premises.
From the record as a whole, we are convinced that mat or bat type insulation rather than the blown type was a principal motive for defendant to enter into the contract forming the basis of this suit. The LSA-Civil Code provides:
“Article 1842: Error as to the thing, which is the subject of the contract, does not invalidate it, unless it bears on the substance or some substantial quality of the thing.”
“Article 1843: There is error as to the substance, when the object is of a totally different nature from that which is intended. Thus, if the object of the stipulation be supposed by one or both the parties to be an ingot of silver, and it really is a mass of some other metal that resembles silver, there is an error bearing on the substance of the object.”
Since the plaintiff company failed to supply defendant with the type of insulation represented, we feel that he had good reason to refuse to accept the job and have the contract annulled. See Lyons Milling Co. v. Cusimano, 1926, 161 La. 198, 108 So. 414.
From the record we are convinced that even though the written contract called for “Thermo-Cell” insulation, the salesmen of plaintiff company represented to defendant that he was to receive a mat type insulation and that this was one of the principal motives for defendant entering into the contract. It is clear to our minds that defendant did not know that “Thermo-Cell” only came as a blown-type substance; but to the contrary, had been convinced by plaintiff’s salesmen that he was to receive a mat or bat type insulation.
For the above and foregoing reasons, the judgment appealed from is affirmed.
Affirmed.