TAYLOR, Judge.
This is an appeal by the defendant C. B. Fox Company, from a judgment rendered in favor of the plaintiff, United Suriname Trading Company in the amount of $10,-083.46. The plaintiff, on the 18th of April of 1966, purchased from defendant 800 metric tons of wheat 5% more or less, “No. 1 Dark Hard Winter, minimum protein 13.5%, sedimentation 55, official inspection certificate final as to grade, Doty certificate final as to protein, sedimentation milling quality.” Plaintiff paid for the shipment with an irrevocable letter of credit which provided that, upon delivery to the Bank of America International of the commercial documents including “ * * analysis reports certifying protein and zeleny * * * ” and “ * * * full set clean on board ocean bills of lading * * ”, defendant would be paid for the wheat not to exceed $55,000.00.
The wheat, 775.651 metric tons, was delivered to the M/V Suriname for shipment to Paramaribo, Suriname, and defendant obtained a bill of lading certifying *261 that the consignment had been loaded aboard for shipment to Paramaribo. A sample of wheat was taken and sent to the Doty Laboratories in Kansas, where the analysis of the wheat would be made. Prior to the Doty certificate being received the defendant presented the bill of lading with other documents to the Bank of America International’s New Orleans correspondent for payment of purchase price. A document typed on defendant’s stationery and signed on behalf of defendant read:
“This is to certify that the above wheat shipment was analyzed in accordance with the zeleny sedimentation procedure and the protein was found to be 13.65%.”
This was not the Doty certificate and did not certify the sedimentation value of 55 as required by purchase contract. Defendant was paid $47,547.41, the purchase price less freight. The freight was to be paid for by the United Suriname at Paramaribo.
Relying on its purchase from defendant, plaintiff had consigned to N. V. Meel-maatschappij “De Molen” the same wheat with the same conditions and specifications, including the sedimentation of 55.
When the wheat arrived at Paramaribo and before acceptance by “De Molen”, the Doty certificates were received and showed the zeleny (sedimentation) quality to be 39.1 and not 55 as required by the sales contract. “De Molen” refused to accept the consignment and notified its seller, the plaintiff herein. Plaintiff immediately notified its seller, the defendant, requesting help in its negotiation with “De Molen”.
Plaintiff sent the following cablegram to defendant:
“FOX
“NRTNS
“ORDER 80466C BUYERS REFUSE ACCEPTANCE BASIS DOTY ANALYSIS 8736 DATED 4 MAY SEDIMENTATION 39.1 STOP VESSEL TENDERED FOR 1500 TODAY STOP ENDEAVOURING PERSUADE ACCEPTANCE FOR WHICH BUYERS INSIST WE SIGN FOR TOTAL RESPONSIBILITY STOP SEE NO ALTERNATIVE INSIST WE SIGN PRIOR RECEIPT FROM YOU FOLLOWING CABLE QUOTE WE IN-DEMNIFT [SIC] UNITED SURINAME TRADING ALL CLAIMS DAMAGES AND COST ARISING FROM ACCEPTANCE OF 775.651 METRIC TONS WHEAT FOX CONTRACT 6616 DATED 18 APRIL 1966 WITH SEDIMENTATION 39.1 AS APPOSED [SIC] CONTRACT SEDIMENTATION 55 UNQUOTE STOP ANS EVENT THIS CABLE IS NOTICE THAT WE HOLD YOU RESPONSIBLE FOR ALL CLAIMS DAMAGES AND COSTS ARISING FROM CONTRACT DEFICIENCY AMOUNT• OTHER DEMURRAGE SURNAV ARISING NOW RECEIPT QUOTED CABLE
“UNITED”
Defendant sent to plaintiff the following answer:
“UNITED
“PARAMARIBO (SURINAM VIA RCA)
“AUTHORIZE YOU ACCEPT RESPONSIBILITY AND AGREE INDEMNIFY BUYERS FOR SEDIMENTATION DEFICIENCY * *.
“FOX”
Relying on this the plaintiff negotiated with its buyer, “De Molen”, and they mutually agreed that a reduction of $13.00 per ton from the original price of the wheat would indemnify “De Molen” for all of its loss as a result of the sedimentation deficiency. Plaintiff was paid $10,083.00 less than-'the contract price of the wheat which amount was awarded to plaintiff by judgment of the district court.
*262 C. B. Fox in its defense asserts that the zeleny sedimentation is insignificant in determining the saleability or use of the wheat, and this test has been long abandoned by the grain trade; secondly, that the district court was in error in granting judgment for damages in the amount representing the difference between the sale price of the grain and the price for which it was sold to the only purchaser in Paramaribo, together with all expenses of plaintiff; and thirdly, the district court was in error in holding defendant to be in legal bad faith where its actions were not taken with fraudulent intent.
As to the first defense the law is settled that where one party specifies that the object contracted for is to be of a certain quality, this is a vital stipulation to the contract. The vendee need not explain the reason for the stipulation to the vendor in order to make it a valid one. Lyons Milling Company v. Cusimano, 161 La. 198, 108 So. 414 (1926).
In a letter dated March 31, 1966 (Suriname Exhibit #7), the defendant was apprised that plaintiff’s buyer wanted
“800 metric tons good milling quality No. 1 dark hard winter wheat protein minimum 13.5'% Zeleny 55 Draw sample to be submitted to Doty” (Emphasis added)
Plaintiff needed wheat with a zeleny count of 55 since delivery of such quality wheat to his buyer “De Molen” was a principal cause of his contract with “De Molen”. As may be seen from the answers to interrogatories propounded to Mr. Jaap Mast, the manager of “De Molen”, the buyer considered a zeleny count of 55 as a principal condition of their contract because:
“We produce two qualities of flour from one quality of wheat and we felt that the high zeleny gives us a measure of assurance of the baking quality of the produced flour.”
and further
“Because we imported only one kind of wheat and we had to produce two qualities of flour with which we had to compete with imported flour. We specified also Zeleny 55, to be sure to get the best wheat available for our application.”
Moreover when the wheat arrived in Suriname “De Molen” performed certain baking tests. The wheat was found unsatisfactory for making first quality bread, as may be seen from Interrogatory #9 propounded to Mr. Mast by C. B. Fox Company and the answer to it:
“#9. Did these tests indicate that the wheat was unsatisfactory for use in the De Molen mill?
“To the ninth interrogatory he says:
‘For making second quality: Yes, for making first quality: No.’ ”
Upon learning the zeleny count was not what was contracted for and that the wheat was of an inferior grade, “De Molen” refused the consignment.
When defendant sold wheat to plaintiff, one of the vital stipulations to that contract was that the wheat be of a 55 zeleny count. When defendant failed to deliver this type of wheat he breached his contract with plaintiff and plaintiff thus had a right to sue defendant for damages. LSA-C.C. art. 2477, 1907.
Once the contract was breached by the defendant the plaintiff was still the owner of the wheat aboard the M/V Suriname which was by this time in Paramaribo. Plaintiff had many problems confronting him. He had to unload the wheat and store it but as he testified there was no storage to be had in Paramaribo. He had a right to resell to another buyer if one could be found or plaintiff had the right to re-negotiate with “De Molen” in order to minimize his own loss. The defendant, with full knowledge of the situation, agreed in its answer to plaintiff’s telegram to the terms of any re-negotiation which *263 plaintiff might effect with “De Molen”. Therefore defendant is estopped to deny it is liable for any damages which plaintiff might have suffered as a result of these re-negotiations. “De Molen” assessed its loss at $13.00 per ton and the new contract was entered into with this reduction.
LSA-C.C. art. 1934 holds a debtor who is not guilty of fraud or bad faith
“ * * * liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract.” (Emphasis added)
The defendant reasonably knew that in the event of his breach of the contract with plaintiff it would be sufficient cause for plaintiff’s buyer to refuse the consignment and subject the plaintiff to damages. The freight costs incurred by plaintiff would be an item of damages as plaintiff’s buyer would not pay freight on a shipment which it refused to accept. Therefore even if defendant was not in legal bad faith he must compensate plaintiff for the amount of his damages which include freight costs and loss of profit. Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 103, 136 So. 283 (1931).
To determine if the defendant was iñ legal bad faith we need only to look to its actions in this case. It entered into a sale with plaintiff for certain specified wheat and secured a bill of lading. The wheat was loaded on the ship on April 27, 1966 as testified to by Mr. C. B. Fox. And on the same date (Suriname Exhibit #5), a certification that a Zeleny procedure had been complied with, was submitted along with the bill of lading to the bank and defendant was paid $47.547.-41.
The defendant knew that the zeleny count had not been received from the Doty Laboratories at the time the letter of credit was presented for payment but only the protein count. In loading the wheat, permitting it to sail without any knowledge of the sedimentation - count and seeking payment without complying with the requirement of the bill of lading, defendant was in our opinion in bad faith within the contemplation of LSA-C.C. art. 1934, subd. 2 which reads:
“When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages can not exceed this.”
We are of the opinion that in addition to the amount awarded by the trial court plaintiff is also entitled to $161.77 which represents his loss occasioned by the necessity of exchanging $10,083.00 from American dollars into Dutch fildens and $10.34 which represents certain charges which he had to pay to the Bank of America.
For the foregoing reasons, the judgment of the trial court is amended and judgment is rendered in favor of plaintiff against defendant in the full and true sum of $10,255.11 together with legal interest from date of judicial demand until paid. All costs are to be borne by defendant-appellant.
Amended and affirmed.